**Richard COOEY, Petitioner–Appellant,**

v.

**Ralph COYLE, Warden, Respondent–Appellee.**

**No. 98–3050.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 2002.

Decided and Filed April 16, 2002.

Rehearing and Suggestion for Rehearing En Banc Denied June 25, 2002.

Margery Malkin Koosed (argued and briefed), South Euclid, OH, Nathan A. Ray (briefed), Akron, OH, for Appellant.

Michael L. Collyer (argued and briefed), Office of the Attorney General of Ohio, Capital Crimes Section, Cleveland, OH, for Appellee.

Before: SUHRHEINRICH, SILER, and GILMAN, Circuit Judges.

## OPINION

SUHRHEINRICH, Circuit Judge.

This is an appeal from a judgment denying Petitioner Richard Cooey's petition for writ of habeas corpus under 28 U.S.C. § 2254. We determine that Cooey is entitled to a certificate of appealability on only two of his claims. We also decide on the merits that Cooey is not entitled to relief as to either issue.

### I. Background

#### A. Facts

On the night of August 31, 1986, Appellant, Richard Wade Cooey II, on leave from the army, and two of his friends, Clint Dickens and Kenneth Horonetz, threw a large chunk of concrete over the side of a bridge just as Wendy Offredo and Dawn McCreery were passing below along Interstate 77 in Akron, Ohio. The concrete hit Wendy's car, forcing her to pull over. The men went down and offered a ride so the women could call for help. After driving them to a nearby mall to use a telephone, the men took the women to a field where they were raped, beaten, and murdered by Cooey and Dickens. The men also stole Wendy's jewelry.

The bodies were found on September 1. The Summit County Coroner concluded that Wendy and Dawn had died of multiple blows to the head—Wendy received at least three blows and Dawn at least eleven—with strangulation also contributing to Wendy's death. He also concluded that both women had oral and vaginal intercourse before death.

#### B. Procedural History

Cooey was indicted on September 8, 1986, with two counts of aggravated murder in violation of Ohio Rev.Code §§ 2903.01(A) and 2903.01(B), including three specifications of aggravating circumstances in violation of Ohio Rev.Code §§ 2929.04(A)(3), 2929.04(A)(5), and 2929.04(A)(7). Cooey was also charged with two counts of kidnapping with the purpose of engaging in nonconsensual sexual activity, in violation of Ohio Revised Code § 2907.02(A); and two counts of aggravated robbery, in violation of Ohio Rev. Code §§ 2911.01(A)(1) and 2911.01(A)(2). Lastly, he was charged with one count of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(2), for dropping the chunk of concrete on Wendy's car.

Cooey entered a not guilty plea. Cooey waived his right to trial by jury and was tried by a three-judge panel according to Ohio Rev.Code §§ 2945.05 and 2945.06. The panel found Cooey guilty of all counts and specifications.

On December 5, 1986, the panel conducted a mitigation hearing, pursuant to Ohio Rev.Code § 2929.03(C)(2)(b). The panel returned a unanimous verdict, finding beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors, and recommended the death penalty. The two aggravated murders un-

der § 2903.01(A) were merged into the two convictions under Ohio Rev.Code § 2903.01(B). Cooey was sentenced to death for each murder and to imprisonment for the seven other felonies.

Cooey timely appealed, setting forth thirteen assignments of error. The Ohio Court of Appeals upheld Cooey's conviction and sentence on December 23, 1987. *See State v. Cooey,* 1987 WL 31921 (Dec. 23, 1987). Cooey appealed to the Ohio Supreme Court, raising thirty-three issues. On October 11, 1989, the Ohio Supreme Court affirmed Cooey's conviction and death sentence. *See State v. Cooey,* 46 Ohio St.3d 20, 544 N.E.2d 895 (1989). The United States Supreme Court denied certiorari on April 1, 1991.

Cooey then sought state post-conviction relief. He filed a petition to vacate or set aside his sentence pursuant to Ohio Rev. Code § 2953.21, in the Court of Common Pleas of Summit County, Ohio, raising sixty-five claims for relief. On July 31, 1992, the Summit County Common Pleas Court denied Cooey's petition. *See State v. Cooey,* No. 86–09–1109A (Com. Pl. Summit Cty. July 21, 1992). Cooey appealed, raising eight assignments of error. *State v. Cooey,* 1994 WL 201009 (Ohio Ct.App. May 25, 1994). The Ohio Court of Appeals found that most of Cooey's claims were barred by res judicata. *Id.* It did, however, address Cooey's claims of ineffective assistance of counsel on the merits. Cooey appealed to the Ohio Supreme Court, but that court declined to take jurisdiction of Cooey's post-conviction appeal.

On November 3, 1994, Cooey filed an application to reopen his direct appeal. Cooey claimed that his appellate counsel was ineffective and asserted fifty-eight claims that appellate counsel failed to raise. On January 16, 1995, the Ohio Court of Appeals denied his request to reopen his direct appeal, finding that Cooey had procedurally defaulted these claims because he had failed to establish good cause for not filing the application to reopen within ninety days from the effective date of Ohio App. R. 26(B), July 1, 1993. The Ohio Supreme Court affirmed the judgment of the Ohio Court of Appeals. *See State v. Cooey,* 73 Ohio St.3d 411, 653 N.E.2d 252 (1995). Cooey's motion for reconsideration was also denied.

Cooey filed this petition for writ of habeas corpus in October 1996. Among other grounds for relief, Cooey claimed that he was denied the effective assistance of both trial and appellate counsel, and that he was denied a meaningful opportunity to litigate his federal claims in the state courts.

On September 4, 1997, the district court denied the writ. *See Cooey v. Anderson,* 988 F.Supp. 1066 (N.D.Ohio 1997). Under the procedure that pre-dated the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the district court then issued a certificate of probable cause for appeal. Petitioner then filed a notice of appeal.

On October 12, 2000, this Court entered an order ruling that the AEDPA applies to this case, and that the district court's issuance of a certificate of probable cause under the pre-AEDPA version of 28 U.S.C. § 2253(c) was ineffective. We elected to treat Cooey's brief as an application for a certificate of appealability. After expressing our tentative view that Cooey had not made a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2) & (3) with respect to any of the issues raised, we directed Cooey to show cause why we should not deny the application for a certificate. Attached to our order was an appendix summarizing our tentative view as to each issue.

The parties filed their respective briefs responding to the show cause order, and

the matter was argued on January 30, 2002.

## II. Application for Certificate of Appealability

 Under the AEDPA, an appeal from the denial of a writ of habeas corpus may not be taken unless a circuit justice or judge issues a certificate of appealability. A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). We may also reject an issue for appeal if the procedural default doctrine applies. *See Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). However, this determination has two components, "one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id.* at 483, 120 S.Ct. 1595. When the district court denies a habeas petition on procedural grounds alone, the certificate of appealability should issue when the applicant "shows, at least, that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484, 120 S.Ct. 1595.

Cooey raises the following issues in his brief as broadly stated in seven categories, with numerous subissues, and asks us to grant a certificate of appealability as to the following:

I. THE STANDARDS CREATED BY THE UNITED STATES SUPREME COURT AND THE SIXTH CIRCUIT COURT OF APPEALS MANDATED AN EVIDENTIARY HEARING IN MR. COOEY'S CASE.

II. THE IMPROPER WEIGHING OF INVALID CIRCUMSTANCES, AND INADEQUATE CONSIDERATION OF MITIGATING FACTORS, REQUIRE THAT

MR. COOEY'S DEATH SENTENCE BE VACATED.

III. THE IMPROPER CONSIDERATION OF INADMISSIBLE AND PREJUDICIAL MATERIAL BY THE TRIAL COURT REQUIRES THAT MR. COOEY'S DEATH SENTENCE BE VACATED.

IV. THE DISTRICT COURT ERRED WHEN IT FOUND THAT THE ERRORS WHICH OCCURRED AT THE TRIAL PHASE DID NOT DENY [MR. COOEY] HIS RIGHT TO A FAIR TRIAL.

V. THE DISTRICT COURT ERRED IN DETERMINING THAT PETITIONER COOEY HAD PROCEDURALLY DEFAULTED ON HIS CLAIMS.

VI. MR. COOEY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO PREVENT THE IMPERMISSIBLE CUMULATION OF INVALID AGGRAVATING FACTORS AND OTHER PREJUDICIAL INFLUENCES ON THE TRIAL AND SENTENCING DECISIONS; AND FAILED TO REASONABLY INVESTIGATE MITIGATING FACTORS.

VII. OHIO'S DEATH PENALTY LAW IS UNCONSTITUTIONAL.

(Petitioner's Br. at 2; *see also id.* at ii-ix).

We have reviewed the parties' most recent round of briefs, and heard their arguments, and conclude that a certificate of appealability should issue as to only the two following issues:

I. Whether the Ohio Supreme Court failed on direct appeal to correct the trial court's errors in weighing the

aggravating and mitigating factors; and

II. Whether Cooey's trial counsel provided ineffective assistance.

As for the remaining issues raised, we hold that none meets the standards for granting a certificate of appealability, for the reasons originally articulated in the appendix to our order dated October 12, 2000, which we reincorporate and attach as an unpublished appendix to this opinion.

## III. Petition

■ This Court reviews a district court's decision in a habeas proceeding de novo. *Staley v. Jones,* 239 F.3d 769, 775 (6th Cir.2001).

■ Under the AEDPA, a federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1) (1994 & Supp. VII), or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.* § 2254(d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts."

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" occurs when "the state court identified the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Under this standard, a state decision is not unreasonable simply because the federal court concludes that the state decision is erroneous or incorrect. *Id.* at 411, 120 S.Ct. 1495. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410–12. Factual findings by state courts are presumed correct. 28 U.S.C. § 2254(e)(1).

### A. Reweighing

■ Cooey argues that the Ohio Supreme Court's reweighing of the aggravating circumstances and mitigating factors leading to his death sentence was erroneous.[1]

In *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Supreme Court confirmed that the federal Constitution does not prohibit reweighing or harmless analysis as a cure for weighing errors. Although not required to do so, once it elects to reweigh, the state appellate court must "give each defendant an individualized and reliable sentencing determination based on the defendant's circumstances, his background and crime." *Id.* at 749, 110 S.Ct. 1441.

---

1. Under Ohio Rev.Code § 2929.05(A), the Ohio appellate courts are required to "independently weigh" the aggravating circumstances against the mitigating factors:

> The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they *shall review and indepen-*

*dently weigh* all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate.

Ohio Rev.Code § 2929.05(A) (emphasis added).

The three-judge panel convicted Cooey of four aggravated murder counts, two counts relating to victim Wendy Offredo, and two relating to victim Dawn McCreery. Each contained three capital specifications. For each victim, Cooey was charged with purposely killing her with prior calculation and design (Ohio Rev. Code § 2903.01(A)), and with purposely killing her in the course of an enumerated felony, being kidnapping, rape, and aggravated robbery (Ohio Rev.Code § 2903.01(B)). The same three capital specifications were attached to each count:

(1) the murder was committed to escape detection for other crimes (Ohio Rev. Code § 2929.04(A)(3));

(2) the murder was part of a course of conduct that involved the purposeful killing of two or more persons (Ohio Rev.Code § 2929.04(A)(5)); and

(3) the murder was committed while committing or attempting to commit or fleeing immediately after committing or attempting to commit rape and/or kidnapping and/or aggravated robbery and Cooey was a principal offender in the commission of the aggravated murder and/or the aggravated murder was committed with prior calculation and design. (Ohio Rev.Code § 2929.04(A)(7)).

The three-judge panel found Cooey guilty of all counts and all specifications. However, before sentencing, the court made the State elect which count for each victim the court would sentence upon. The State elected the felony murder count for each victim. The three-judge panel also found that the "course of conduct" specification for each count was duplicative, so it considered only one such specification.

In its review, the Ohio Supreme Court initially determined that the trial court had erred in several respects in its weighing. First, the Ohio Supreme Court concluded that the trial court erred in combining and collectively considering the aggravating circumstances of both murders:

Cooey argues that the trial court erred in combining the aggravating circumstances related to *both* murders, and weighing all of them collectively against the mitigating factors. We agree. As Cooey states, each murder was a separate offense subject to a separate penalty. By adding together the aggravating circumstances of both murders in the penalty phase, the trial court denied Cooey that "consideration of ... the circumstances of the *particular* offense ..." that is "a constitutionally indispensable part of the process of inflicting the penalty of death." (Emphasis added.) *Woodson v. North Carolina* (1976), 428 U.S. 280, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (plurality opinion).

Therefore, when a capital defendant is convicted of more than one count of aggravated murder, the penalty for each individual count must be assessed separately. Only the aggravating circumstances related to a given count may be considered in assessing the penalty for that count.

. . .

We do not think it is clear that the trial court's error determined the result. Indeed, we conclude that the aggravating circumstances of each murder, weighed separately, outweigh the mitigating factors. Thus, although the trial court erred, its error was not plain error, and therefore not reversible error in light of Cooey's failure to raise it in the court of appeals.

*State v. Cooey*, 544 N.E.2d at 916–17.

The Ohio Supreme Court also determined that certain specifications should have been merged:

[Cooey] also argues that, under the facts in this case, the specifications should

have been merged because they arose from the same acts and were committed with the same animus. See *Jenkins, supra*, ... syllabus. We agree. The specifications for which Cooey was trying to escape accountability when he killed Wendy and Dawn (R.C. 2929.04[A][3]) are the same as those that support his convictions of the felony murder specifications. (R.C. 2929.04[A][7]). Thus, the "escaping accountability" specifications lack "a significance independent of the other" specifications. *Logan, supra*, ....

Cooey did not raise this error in the court of appeals, and we find it far from clear that it affected the panel's verdict. We therefore cannot hold it plain error. *State v. Cooey*, 544 N.E.2d at 917. The Ohio Supreme Court also found that the panel should not have considered mitigating factors not raised by Cooey:

Cooey correctly asserts that the trial court erred by considering all of the mitigating factors set forth in R.C. 2929.04(B) even though Cooey did not raise some of them. See *State v. De-Pew*, .... However, the sentencing opinion lists what the court understood to be the aggravating circumstances, and the absence of mitigating factors is not among them. Cf. *State v. Broom, supra*. ... We conclude that the absence of mitigating factors was not impermissibly transformed into an aggravating circumstance.

*Id.* The Ohio Supreme Court further held that the trial court had misconstrued the standard for legal insanity under Ohio Rev.Code § 2929.04(B):

Cooey argues that the trial court and the court of appeals misapplied the standard for legal insanity to the mitigating factor created by R.C. 2929.04(B)(3). We agree. The mitigating factor existed if Cooey "... lacked substantial capacity to appreciate the criminality of his con-

duct or to conform his conduct to the requirements of the law...." The question was not, as the trial court thought, whether Cooey completely lacked capacity to do so. Cf. *Lawrence, supra*....

... Of course, under either standard, it must be demonstrated that such lack of capacity resulted from a mental disease or defect.... Since the trial court found that Cooey did not have a mental disease or defect, this mitigating factor would not have applied even under the correct standard.

*Id.* at 918.

The Ohio Supreme Court then turned to the question of whether the aggravating circumstances outweighed the mitigating factors, "as part of our statutorily mandated review." Specifically, the Ohio Supreme Court considered evidence relating to Cooey's physical and mental history. First, it noted the testimony of Dr. James W. Siddall, a clinical psychologist, who had interviewed Cooey and performed a standard battery of psychological tests on him. Dr. Siddall determined that Cooey exhibited a "mental disorder" consisting of a "conduct disorder" and a pattern of substance abuse. *Id.* at 919. The Ohio Supreme Court noted that Siddall "testified that a 'mental disorder' is not necessarily a 'mental illness,' but that it probably 'would affect judgment as well as behavioral control.'" *Id.* The Court also observed that Siddall testified that Cooey's history of child abuse was significant, a fact which Cooey's mother further attested to. *Id.* The Court ultimately concluded that Cooey's mental disorder was entitled to "little legal weight," because his mental disorder "consisted of the ingestion of drugs in combination with his 'conduct disorder,'" and Dr. Siddall's "definition of 'conduct disorder' as a pattern of violating other people's rights could apply to virtually every criminal." *Id.*

The Ohio Supreme Court also took into account Cooey's youth, subject to his military status, and his lack of previous criminal convictions:

Cooey's youth is entitled to some weight, but his military status makes it reasonable to expect more maturity from him than one might otherwise expect of a nineteen-year-old. His history as a severely abused child is certainly relevant for whatever it may have contributed to his mental problems.

Although the record shows that Cooey has had contact with juvenile authorities, the record does not demonstrate any previous criminal convictions or delinquency adjudications. This factor is entitled to some weight in mitigation.

*Id.* Nevertheless, the Ohio Supreme Court ultimately concluded as follows:

These factors tend to suggest that Cooey may have been less responsible for his acts than were most people. However, they are outweighed beyond any reasonable doubt by the aggravating circumstances of rape and kidnapping. Cooey used deceit to lure Wendy and Dawn into his car, drove them to a deserted area, then took what he wanted from them by force. He beat them repeatedly with a nightstick, then tried to make sure Wendy was dead by strangling her.

We conclude that the properly admitted evidence overwhelmingly proves that the aggravating circumstances outweigh, beyond a reasonable doubt, the mitigating factors.

*Id.*

As the foregoing illustrates, the Ohio Supreme Court followed the dictates of *Clemons* in that it gave individualized consideration to Cooey's circumstances, his background, and the crime. As the district court ruled:

In this case, the Supreme Court of Ohio committed no such error. First, in its decision, the Court gave no consideration to those factors which the trial court had erroneously included in its analysis. *Id.* at 41–42, 544 N.E.2d 895, 46 Ohio St.3d 20, 544 N.E.2d 895. Second, it did not reach its decision merely on the existence of a single aggravating circumstance. Instead, it noted the specific nature of the crimes at issue, the use of deceit in committing those crimes, and the amount of force employed by the perpetrator. *Id.* ("[The mitigating factors] are outweighed beyond any reasonable doubt by the aggravating circumstances of rape and kidnaping. Cooey used deceit to lure Wendy and Dawn into his car, drove them to a deserted area, then took what he wanted from them by force. He beat them repeatedly with a nightstick, then tried to make sure Wendy was dead by strangling her."). Finally, the Court provided a thorough discussion of and gave careful consideration to all mitigating factors relevant to Cooey's sentence. In sum, the Ohio Supreme Court acted properly when, pursuant to § 2929.05, it elected to reweigh the aggravating circumstances and mitigating factors of this case.

*Cooey v. Anderson,* 988 F.Supp. at 1097–98 (footnote omitted). Thus, it is simply baseless to suggest, as Cooey does in his brief at 46–47, that the Ohio Supreme Court's reweighing was merely conclusory and insufficient under constitutional standards. The Ohio Supreme Court's decision was not "'contrary to,' nor did it involve[ ] an unreasonable application of, clearly established Federal law." The Ohio Supreme Court was properly allowed to reweigh under *Clemons,* and considered all the factors *Clemons* set out as part of the reweighing analysis. And even if we thought that the Ohio Supreme Court's application of *Clemons* was incorrect, which we do not, it was certainly not an

unreasonable application of *Clemons.* Nor can it be said that the Ohio Supreme Court's holding was based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings. *See* 28 U.S.C. § 2254(d)(1) & (2). In short, the "reweighing issue" provides no basis upon which to grant the writ.

## B. Ineffective Assistance of Trial Counsel

■ Cooey also argues that his trial counsel were ineffective for various reasons. To show that counsel was constitutionally ineffective, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and also that counsel's deficiencies prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In other words, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

■ In *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court explained that "[t]he prejudice component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372, 113 S.Ct. 838. The Court further explained that "unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*

## 1. Impermissible Cumulation of Aggravating Factors

■ First, Cooey claims that his trial counsel failed to prevent or redress the impermissible cumulation of aggravating factors at the sentencing phase. Specifically, Cooey asserts that trial counsel were constitutionally ineffective for failing to object to the trial court's separate weighing of duplicative aggravating factors, in contravention of the clear mandate of the Ohio Supreme Court in *State v. Jenkins,* 15 Ohio St.3d 164, 473 N.E.2d 264 (1984) (syllabus, ¶ 5).

The Ohio Supreme Court acknowledged the underlying weighing error, but concluded that "Cooey did not raise this error in the court of appeals, and we find it far from clear that it affected the panel's verdict. We therefore cannot hold it plain error." *State v. Cooey,* 544 N.E.2d at 917. As to Cooey's assigned error of ineffective assistance of counsel based on counsel's failure to object, the Ohio Court of Appeals held:

> The Ohio Supreme Court reviewed this claim and found that the failure of the trial court to merge the aggravating circumstances at issue was not plain error. This Court concludes that there also was not a 'reasonable probability' that defendant was prejudiced by his trial lawyers' failure in regard to the merger of aggravating circumstances.

*State v. Cooey,* 1994 WL 201009, at * 15.

As the district court held, "the evidence confirming the aggravating circumstances of Cooey's offenses is overwhelming." *Cooey v. Anderson,* 988 F.Supp. at 1088. More importantly, the Ohio Supreme Court corrected the trial court's error in failing to merge the aggravating circumstances, and upon independent reweighing, still concluded that "the properly admitted evidence overwhelmingly proves that the aggravating circumstances outweigh, be-

yond a reasonable doubt, the mitigating factors." *State v. Cooey*, 544 N.E.2d at 919.

The Ohio Court of Appeals ruled on Cooey's postconviction petition by holding that there was not a "reasonable probability" that Cooey was prejudiced by his trial lawyers' failure to argue that the aggravating circumstances should not have been merged. Cooey has not contended, and cannot establish, how this conclusion is at odds with *Strickland*. *See* 28 U.S.C. § 2254(d).

### 2. Other Failures

Cooey also alleges that trial counsel were deficient for several other reasons, which we address in order.

### a. Failure to Object to Constitutionally Infirm Procedures

Cooey claims that counsel were ineffective regarding jury waiver, selection of the three-judge panel, introduction of gruesome slides, and the indictment.

### i. Jury Waiver

■ Cooey claims that his trial counsel failed to insure that he knew that he was waiving his fundamental right to a jury trial. However, as the Ohio Court of Appeals found, Cooey failed to present any evidence supporting his assertion. *State v. Cooey*, 1994 WL 201009, at *13, *14. *See also State v. Kapper*, 5 Ohio St.3d 36, 448 N.E.2d 823, 826 (1983). In other words, the court held implicitly that Cooey defaulted this claim in the state postconviction trial proceeding. By failing to submit evidence, Cooey barred himself from developing the claim further, and is not now entitled to an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2)(A)(ii).

■ The court also held that Cooey "failed to show that his trial lawyers' performance fell below an objective standard of reasonable representation." *State v. Cooey*, 1994 WL 201009, at *14. Cooey makes no attempt to show how this ruling is contrary to, or an unreasonable application of, Supreme Court precedent. It is meritless.

### ii. Three–Judge Panel

■ Cooey complains that trial counsel should have objected to the method of empaneling the three judges. The Ohio Court of Appeals held:

> Defendant has failed to indicate how the makeup of the three judge panel had an adverse impact on him. Accordingly, defendant did not demonstrate a "reasonable probability" that he was prejudiced by his trial lawyers' alleged failure.

*State v. Cooey*, 1994 WL 201009, at *12. Again, the state appellate court's finding that Cooey had not demonstrated prejudice under *Strickland*'s second prong was reasonable. This claim is utterly without merit.

### iii. Gruesome Slides

The Ohio Court of Appeals held that:

> The Ohio Supreme Court ruled that, although the photographs were gruesome, they were highly probative. *Cooey II*, at 36, 544 N.E.2d 895. The Supreme Court further ruled that the trial court committed harmless error in admitting four of the photographs that were duplicative. *Id.* There is no "reasonable probability" that defendant was prejudiced by his trial lawyers' failure to object to the admissibility of the photographs at issue.

*Id.* at *14.

■ Again, Cooey has not shown how the Ohio Court of Appeals' decision is an unreasonable application of *Strickland's* prejudice prong. More fundamentally,

this fails to state a constitutional claim, *see Gerlaugh v. Stewart,* 129 F.3d 1027, 1032 (9th Cir.1997) (holding that the claim that a gruesome photo of decedent was erroneously admitted did not raise "the spectre of fundamental fairness such as to violate federal due process of law"), and therefore is not cognizable on habeas.

### iv. Unsigned Indictment

██ Finally, Cooey argues that trial counsel failed to object to the use of an unsigned indictment against him. According to Cooey, the indictment was invalid because it was not signed by the foreman of the jury. First of all, the Ohio Supreme Court found that, although it was not originally part of the appellate record, the signed indictment was subsequently sent to the high court by the trial court. *State v. Cooey,* 544 N.E.2d at 909. Thus, "that it was journalized at all requires us to accept it as genuine and as having been filed at the time indicated by the date stamp, for the journal of a court of record imports absolute verity absent clear and convincing evidence to the contrary." *Id.* at 909–10. Then, the Ohio Court of Appeals found that:

> The Ohio Supreme Court held that there was a signed indictment filed in the trial court in this case. *Cooey II,* at 30, 544 N.E.2d 895. Accordingly, there was not a "reasonable probability" that defendant was harmed by his trial lawyers' failure to raise this claim.

*State v. Cooey,* 1994 WL 201009, at *14. As an initial matter, the Ohio Supreme Court's fact finding is entitled to deference. Furthermore, Cooey has not demonstrated how the Ohio Court of Appeals' ruling is an unreasonable application of *Strickland's* prejudice component.

### b. Presentence Report

██ Cooey complains that his trial lawyers were ineffective because they requested a presentence report. According

to Cooey, the request was problematic because the presentence report contained the police captain's sentence recommendation as well as prior uncharged criminal misconduct. The Ohio Court of Appeals ruled to the contrary. *Id.* at *13.

The Ohio court reasonably applied *Strickland.* Indeed, Cooey does not even make a stab at showing how this decision is contrary to federal law.

### c. Preparation for Mitigation

██ Cooey maintains that counsel were ineffective in failing to prepare for mitigation. More precisely, Cooey complains that counsel requested a presentence report a mere ten days prior to the mitigation hearing. This claim was not raised in the state courts and is therefore defaulted. Even if we reviewed the claim, and even if this alleged deficiency constituted ineffective assistance, Cooey has not explained how he suffered actual prejudice. In short, Cooey has not shown a violation of *Strickland.*

Cooey asserts that counsel should have contacted social workers to assist in presenting mitigating evidence, especially since the strongest factors in favor of mitigation were Cooey's youth and substance abuse. The Ohio Court of Appeals held that Cooey "failed to proffer any exculpatory evidence in support of his petition that was not presented at defendant's trial and arguably would have been if the trial court had appointed a social worker to assist defendant. Accordingly, he did not demonstrate a 'reasonable probability' that he was prejudiced by his trial lawyers' failure to request assistance of a social worker." *Id.* at *14.

Cooey has not shown that the Ohio Court of Appeals's ruling is contrary to, or an unreasonable application of *Strickland.*

Third, Cooey contends that trial counsel failed to obtain a pharmacologist and/or toxicologist to assist them in preparing Cooey's case pursuant to Ohio Rev.Code § 2929.024. The Ohio Court of Appeals ruled as follows:

> Trial counsel failed to request the appointment of a pharmacologist and/or toxicologist to give opinions as to the effect of chemicals in defendant's system. The Supreme Court ruled on direct review that expert testimony about defendant's alleged diminished capacity was properly excluded from the guilt/innocence phase of his trial. *Cooey II*, at 26, 544 N.E.2d 895. Although the psychologist whose affidavit was attached to defendant's petition to vacate or set aside sentence opined that a pharmacologist and/or toxicologist could have presented the three judge panel " 'a more detailed and complete understanding of the impact' of drugs on defendant's cognitive and emotional functioning," neither the psychologist nor defendant's counsel has explained how that "more detailed and complete understanding" would have been exculpatory. Accordingly, defendant did not demonstrate a "reasonable probability" that he was prejudiced during either phase of his trial by his trial lawyers' alleged failure.

*Id.* at *11. Again, Cooey has not shown that the Ohio Court of Appeals unreasonably applied *Strickland.*

#### d. Failure to Object to Prosecutorial Misconduct

██ The Ohio Court of Appeals ruled as follows:

> The properly admitted evidence against defendant was so overwhelming that, to the extent defendant's trial lawyers failed to object to irrelevant evidence or prosecutorial misconduct, there was not a "reasonable probability" that defendant was prejudiced by that failure.

*Id.* at *13. Cooey has simply not demonstrated how this ruling is an unreasonable application of *Strickland.*

### IV. Conclusion

For all of the foregoing reasons articulated in this opinion and accompanying unpublished appendix, we conclude that Cooey is not entitled to habeas relief. **SO ORDERED.**

### ORDER

#### APPENDIX TO PUBLISHED OPINION

Before NELSON, SUHRHEINRICH, and GILMAN, Circuit Judges.

Richard W. Cooey was convicted in the Court of Common Pleas of Summit County, Ohio, on two counts of aggravated murder, two counts of aggravated robbery, two counts of kidnaping, one count of felonious assault, and four counts of rape. The trial court sentenced Mr. Cooey to lengthy prison sentences for the robbery, kidnaping, assault, and rape convictions, and to death for the aggravated murder convictions. A number of appeals, both direct and collateral, followed in the state court system.

On Oct. 17, 1996, after he had exhausted his state remedies, Mr. Cooey filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio. That court denied the writ. See *Cooey v. Anderson*, 988 F.Supp. 1066 (N.D.Ohio 1997). Under the procedure prescribed by law prior to enactment of the Anti–Terrorism and Effective Death Penalty Act of 1996 (the AEDPA), the district court issued a certificate of probable cause for appeal. The filing of a notice of appeal followed.

After each of the parties submitted a proof brief on the merits of the appeal, we were asked to make an interlocutory determination as to whether the petitioner's case is governed by the AEDPA. We

agreed to do so, and the issue was fully briefed. Upon consideration, we now decide that the appeal is indeed subject to the AEDPA.

The AEDPA had an effective date of April 24, 1996. The district court applied pre-AEDPA habeas corpus standards on the ground that on April 18, 1996—a week before the AEDPA's effective date—Mr. Cooey filed a motion for appointment of counsel and a notice of intent to file a petition for habeas corpus. Mr. Cooey's actual habeas petition was not filed until October 17, 1996, however, and this court has now squarely held, in a published decision, that the AEDPA *does* apply to petitioners in situations such as this. See *Williams v. Coyle*, 167 F.3d 1036, 1039 (6th Cir.1999). We see no principled basis for distinguishing *Williams* from the case at bar, and we are satisfied that *Williams* is not inconsistent with any subsequent decision of the United States Supreme Court.

Because the AEDPA applies to Mr. Cooey's case, the district court's issuance of a certificate of probable cause under the pre-AEDPA version of 28 U.S.C. § 2253(c) was ineffective. An appeal may not be taken here absent the issuance of a "certificate of appealability" indicating "which specific issue or issues satisfy the showing required by [28 U.S.C. § 2253(c)(2) ]"—*i.e.*, "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) and (3).[1]

Under circumstances similar to those presented here, this court has on occasion elected to treat a certificate of probable cause as if it were a certificate of appealability. See *Mackey v. Dutton*, 217 F.3d 399, 406—07 (6th Cir.2000). This was done, however, only after the court had satisfied itself that all of the issues in the appeal actually met the standard for a certificate of appealability. *Id.*

In the case at bar, after careful examination of Mr. Cooey's proof brief—a brief that we have chosen to treat as an application for a certificate of appealability—our tentative view is that Mr. Cooey has not made "a substantial showing of the denial of a constitutional right" with respect to any of the issues he seeks to raise. The appendix attached hereto summarizes our current thinking on the subject.

To assist us in reaching a final decision as to whether a certificate of appealability should issue on any of his constitutional claims, the petitioner is hereby directed to show cause, in a brief of not more than 50 pages, why we should not deny the application for a certificate. The petitioner's brief is to be filed on or before November 30, 2000. The respondent may file an answering brief of not more than 50 pages on or before January 12, 2001, and the petitioner may file a reply brief of not more than 25 pages on or before February 2, 2001. Each of these briefs shall comply in form with the requirements of Rule 32(a)(1)-(6), Fed. R.App. P.

## APPENDIX

The panel here sets forth its tentative thoughts on whether Mr. Cooey's proof brief of December 23, 1999, demonstrates

---

1. Even if the AEDPA's substantive provisions did not apply to his case, Mr. Cooey would still be required to seek a certificate of appealability here, his appeal from the federal district court's decision having been filed after April 24, 1996. See *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1601, 146 L.Ed.2d 542 (2000) ("[W]hen a habeas corpus petitioner seeks to initiate an appeal of the dismissal of a habeas corpus petition after April 24, 1996 ... the right to appeal is governed by the certificate of appealability (COA) requirements ... whether the habeas corpus petition was filed in the district before or after AEDPA's effective date").

that Cooey is entitled to a certificate of appealability with respect to any of the issues discussed therein.

In order for this court or a judge thereof to grant a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Any certificate of appealability that is granted must "indicate which specific issue or issues satisfy the showing required by paragraph (2)." *Id.* at (3). As the Supreme Court recently indicated, we may reject an issue for appeal if the procedural default doctrine applies, without considering whether there has been a constitutional violation for that specific issue. *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000) ("Determining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding. Section 2253 mandates that both showings be made before the court of appeals may entertain the appeal").

We assume that the standards of 28 U.S.C. § 2254(d) are to be imported into the analysis under § 2253(c). Section 2254(d) now provides that if a claim was adjudicated on the merits in state court, the federal court cannot grant habeas corpus relief unless the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In making the inquiry under § 2253(c), then, we believe that we must ask whether Mr. Cooey has made a "substantial showing" that the state court decision was contrary to clearly established constitutional doctrine as declared by the Supreme Court.

We also assume that the standard of § 2253(c) should not override the deference required by § 2254(e)(1) for a state court's factual findings. Given what the Supreme Court said about the procedural default doctrine in *Slack*, it seems clear that the deference required by § 2254(e) should take precedence (like a procedural default) over any constitutional violation that might be considered demonstrable were the question being addressed as a matter of first impression.

We note that wherever the Ohio Supreme Court conducted "plain error" review in rejecting a claim as procedurally defaulted, we must likewise treat the claim as procedurally defaulted. In *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir.1989), the Sixth Circuit held that a Michigan court's review of a claim for "manifest injustice" did not preclude a procedural bar. Following *Paprocki*, the Sixth Circuit has said that "[c]ontrolling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542, No. 98–4316, 2000 U.S.App. LEXIS 20170, at *32 (6th Cir.2000).

The standard citation for the procedural default doctrine in the Sixth Circuit is *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court has determined that a state proce-

dural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

Against this background, we turn our attention to the individual issues raised in Mr. Cooey's proof brief.

## DISCUSSION

### I. Whether Mr. Cooey should have a new Evidentiary Hearing

Mr. Cooey argues that he should have received an evidentiary hearing in state court on all of the "issues contained in his habeas petition." (p. 14).[1] Since that did not happen, he claims that he is entitled to have the federal district court conduct an evidentiary hearing under *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). He also argues that *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) does not apply. (p. 15).

This whole line of argument is irrelevant now that we have decided that the AEDPA applies. Section 2254(e)(2) describes the exclusive circumstances when a federal district court is allowed to hold an evidentiary hearing:

"If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

Mr. Cooey does not demonstrate that any facts underlying any of his claims could not have been discovered through due diligence earlier, nor does he show that any facts would establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found him guilty. As the district court held, even applying pre-AEDPA standards, "Cooey is not entitled to an evidentiary hearing as a matter of law ... '[A] district court is without authority to hold an evidentiary hearing on a matter on which the state court has made findings unless one of the factors contained in § 2254(d).'" *Cooey v. Anderson*, 988 F.Supp. 1066, 1079–80 (N.D.Ohio 1997) (quoting *Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir.1997)).

Moreover—and perhaps even more significantly—Mr. Cooey does not make a substantial showing that an evidentiary hearing was *constitutionally* required, such that the federal district court's failure to conduct one was a denial of a constitutional right. In order to make such a showing, Mr. Cooey would have first to show that the AEDPA's restrictions on federal evidentiary hearings are unconstitutional. Thus, Mr. Cooey's first claim does not merit issuance of a certificate of appealability.

### II. Five Grievous Errors

Mr. Cooey next argues that the state trial court improperly weighed aggravating circumstances, thus making "five grievous

---

1. All page references are to Mr. Cooey's proof brief. All argument headings are taken from Mr. Cooey's proof brief as well.

errors that tipped the scale irreparably to death." (p. 22). We shall consider these alleged errors in turn.

### A. "Principal Offender"

Ohio Revised Code § 2929.04(A)(7) lists as an aggravating circumstance that the offense was "committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit, kidnaping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder, or if not the principal offender, committed the aggravated murder with prior calculation and design."

### 1. Whether "Principal offender" is vague.

Mr. Cooey argues that the term "principal offender" is "vague" (p. 23), and that it therefore failed to "genuinely narrow the class of persons eligible for the death penalty" as required by *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

This argument was addressed by the Ohio Court of Appeals, which held that "[w]here a term is undefined by statute the term is to be accorded its common, everyday meaning," and that the "common, everyday meaning of principal offender is that the person is the actor, or absolute perpetrator of the crime." *State v. Cooey*, 1987 WL 31921, 1987 Ohio App. LEXIS 10341, at *14 (Ohio Ct.App.1987). The

court also pointed to an Ohio Supreme Court decision construing "principal offender" to mean the "actual killer"—*State v. Penix*, 32 Ohio St.3d 369, 371, 513 N.E.2d 744, 746 (1987); subsequent Ohio Supreme Court decisions have confirmed that construction. See, *e.g.*, *State v. Getsy*, 84 Ohio St.3d 180, 197, 702 N.E.2d 866, 884 (1998) (holding that "actual killer" has the same meaning as a jury instruction which said "one who personally performs every act constituting the offense").

As a federal court, we are of course bound to take the state statute as construed by the state court. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (holding that in a vagueness challenge "a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered"). The term "principal offender" hardly seems vague on its face, much less as construed by the Ohio court to mean the "actual killer." [2] Moreover, the state correctly points out in its brief that Mr. Cooey has never made this claim before, not even in the federal district court. (State's brief at 32). Mr. Cooey's allegation of unconstitutional vagueness thus appears to have no merit.

### 2. Whether the trial court failed to define "principal offender"

Mr. Cooey asserts that the trial court failed to provide a definition of "principal offender" until the state had rested its case.[3] (p. 25). This allegedly hurt the "de-

---

**2.** The trial panel's definition of "principal offender" is set forth in footnote 3, *infra*.

**3.** This may not be true. The state rested its case in a statement reported on p. 279 of Transcript Vol. VI, and on pp. 280—81 the defense lawyer made the following statement: "We have just been handed this *prior to this afternoon* [emphasis added] and I would just like, for the record to read it. It says: 'For purposes of O.R.C. 2929.04(A)(7), a

principal offender is one who actively participates in the crime of aggravated murder through the commission of one or more overt acts. The offender must have himself, by an overt act which caused or substantially contributed to the death, killed the victim, attempted to kill, or intended to kill, in order to be a principal offender. There may be more than one principal offender in the commission of the crime. A principal

fense ability to examine state witnesses." Mr. Cooey also suggests that the definition given was "tailored to the State's case, evidencing a possible bias on the part of the panel." Mr. Cooey produces no evidence for this bias allegation, nor does he explain how his case was hurt by any defense confusion as to what "principal offender" means. Presumably, Mr. Cooey's counsel would have tried to minimize Mr. Cooey's involvement in the rapes and murders no matter what meaning they ascribed to "principal offender." What is more, as the state's brief points out, Mr. Cooey never made this claim before, so it is procedurally barred at this point.

### 3. Whether "Principal offender" fails to narrow

Mr. Cooey then asserts that "principal offender" fails to narrow the class of offenders eligible for the death penalty because the definition of "principal offender" merely replicates the elements of aggravated murder. (p. 25—26) This assertion too is meritless. The Ohio Supreme Court has already held in *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984) that "the state, in order to prevail upon an aggravating circumstance under R.C. 2929.04(A)(7), must *additionally* prove that the offender was the principal offender in the commission of the aggravated murder or, if the offender was not the principal offender, that the aggravated murder was committed with prior calculation and design." *Id.* at 280 n. 17 (emphasis added). The "principal offender" element thus serves a narrowing function, because it is in addition to the base offense that the state must prove.

Even if the provision for aggravated circumstances merely replicated the provision

for aggravated murder, moreover, that would still be insufficient to support Mr. Cooey's claim. As the Supreme Court held in a recent case, "an aggravating circumstance *may duplicate* an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed *by the definition of the offense itself.*" *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1513 n. 16, 146 L.Ed.2d 389 (2000) (emphasis added) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)). The result in *Lowenfield* was that the Court upheld a death sentence where the defendant had been convicted of first-degree murder under a law that stated, "[T]he offender has a specific intent to kill or to inflict great bodily harm upon more than one person," and where the sole aggravating circumstance was that "the offender knowingly created a risk of death or great bodily harm to more than one person." *Lowenfield*, 484 U.S. at 243, 108 S.Ct. 546. The Court held:

"Here, the 'narrowing function' was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that 'the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.' The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm. There is no question but that the Louisiana scheme narrows the class of death-eligible murderers and then at the sentencing phase allows for the consider-

---

offender is not a mere passive accomplice or aider and abettor.' I believe that's the definition that the Court has instructed us we are to use."

The judge then responded, "That's correct."

ation of mitigating circumstances and the exercise of discretion. The Constitution requires no more." *Id.* at 246, 108 S.Ct. 546.

Applying the holding of *Lowenfield* to Mr. Cooey's case, it would be entirely within constitutional bounds for Ohio to provide similar definitions for both "aggravated murder" (in Ohio Rev.Code § 2903.01(B)) and "aggravating circumstances" (in Ohio Rev.Code § 2929.04(A)(7)). What matters is that Ohio has, *in the first instance*, narrowed the class of those eligible for the death penalty by requiring some aggravated form of murder. Accordingly, this claim of Mr. Cooey does not make a substantial showing of a constitutional violation.

### B. Whether the trial court improperly counted two aggravating circumstances

Mr. Cooey then argues that the panel of judges at his trial erred to his prejudice by finding as aggravating circumstances both that Mr. Cooey was the "principal offender" and that his murders were "committed with prior calculation and design." (p. 28). This claim arises from the text of Ohio Rev.Code § 2929.04(A)(7):

> "The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, *if not the principal*

*offender,* committed the aggravated murder with prior calculation and design." (emphasis added).

Note that the factors "principal offender" and "prior calculation and design" are disjunctive. As the Ohio Supreme Court held in *State v. Penix,* 513 N.E.2d at 746, these two factors are "alternatives which are not to be charged and proven in the same cause. Thus, if the defendant is found to be the principal offender, then the aggravating circumstance is established, and the question of whether the offense was committed with prior calculation and design is irrelevant with respect to the death sentence."

Mr. Cooey argues that because the trial panel of judges looked at both factors, the sentence of death was fatally flawed. The district court, however, noted that the Ohio Supreme Court limited its review of this claim to plain error,[4] because Mr. Cooey failed to raise this claim at the proper time. *Cooey v. Anderson,* 988 F.Supp. 1066, 1093—94 (N.D.Ohio 1997). The district court then held this claim procedurally defaulted, a holding which Mr. Cooey cannot overcome unless he establishes both cause and prejudice as required by *Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[5] *Id.* at 1094. Mr. Cooey does not even attempt to establish cause and prejudice as to this claim.

Even if this claim were not procedurally defaulted, we do not think this court should review it. Mr. Cooey here claims nothing more than that the Ohio court did

---

4. The district court held, following *Paprocki v. Foltz,* 869 F.2d 281, 285 (6th Cir.1989), that the Ohio Supreme Court's plain error review did not preclude a procedural bar. *Cooey v. Anderson,* 988 F.Supp. at 1085.

5. *Wainwright* forbids federal habeas review of claims procedurally defaulted in state court, unless the petitioner can demonstrate good

cause for his failure to conform to the procedural requirements under state law and actual prejudice resulting from those requirements. The Sixth Circuit has said that this "cause and prejudice requirement is essential to the safeguarding of the principles of comity and federalism." *Mitchell v. Rees,* 114 F.3d 571, 578 n. 11 (6th Cir.1997).

not apply Ohio law correctly. And such a claim is not justiciable in federal habeas proceedings. As the Supreme Court said in *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991):

"[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67—68, 112 S.Ct. 475.

*C. Whether the trial court improperly double-counted aggravating circumstances and weighed them collectively against the mitigating factors.*

Mr. Cooey argues (p. 28) that the trial court improperly combined the aggravating circumstances related to both murders. He points out that the Ohio Supreme Court found error here, agreeing that "when a capital defendant is convicted of more than one count of aggravated murder, the penalty for each individual count must be assessed separately." *State v. Cooey,* 46 Ohio St.3d 20, 544 N.E.2d 895, 916 (1989). He fails to point out, however, that the Ohio Supreme Court concluded that "the aggravating circumstances of each murder, weighed separately, outweigh the mitigating factors," and that "although the trial court erred, its error was not plain error, and therefore not reversible error in light of Cooey's failure to raise it in the court of appeals." *Id.* at 917. This claim was thus procedurally barred, as the federal district court held, unless Mr. Cooey can demonstrate cause and prejudice under *Wainwright. Cooey v. Anderson,* 988 F.Supp. at 1093—94.

Mr. Cooey also asserts (p. 28) that this is an "error of federal constitutional dimension." The case he cites for that point, however (*Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d

944 (1976)), is inapposite—it had nothing to do with the improper aggregation of aggravating circumstances, but rather struck down a *mandatory* death penalty statute (thus the Court's language that Mr. Cooey quotes on p. 29 about considering the individual circumstances of each crime). Mr. Cooey has therefore not made a substantial showing of a constitutional violation with respect to this claim, especially considering that the Ohio Supreme Court held that the result would have been the same even without any improper double-counting.

*D. Whether the trial court prejudicially erred in failing to merge two duplicative aggravating circumstances*

Mr. Cooey (p. 29—30) points to two aggravating circumstances that are duplicative, and should therefore have been merged:

- Ohio Rev.Code § 2929.04(A)(3): "The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender;"
- Section 2929.04(A)(7): "The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit [the felony], and either the offender was the principal offender ... or, if not the principal offender, committed the aggravated murder with prior calculation and design."

Because these aggravating circumstances are similar, they should not both have been used against Mr. Cooey. The Ohio Supreme Court agreed, saying that the "specifications for which Cooey was trying to escape accountability [Section 2929.04(A)(3) ]... are the same as those that support his convictions of the felony murder specifications [Section 2929.04(A)(7) ]." *State v. Cooey,* 544 N.E.2d at 917. However, the Ohio Supreme Court

went on to say, "Cooey did not raise this error in the court of appeals, and we find it far from clear that it affected the panel's verdict. We therefore cannot hold it plain error." *Id.* On the basis of this procedural default, the federal district court declined to hear this claim. *Cooey v. Anderson,* 988 F.Supp. at 1087—88.

Once again, Mr. Cooey fails to demonstrate that any constitutional right has been violated by the procedural bar or the federal district court's refusal to hear this claim. As the district court noted, "the evidence confirming the aggravating circumstances of Cooey's offenses is overwhelming." *Id.* Any error that the trial court made in failing to merge the two duplicative aggravating circumstances is far outweighed by the collective weight of the valid aggravating circumstances.

*E. Whether the trial court erred by considering mitigating circumstances not in the evidence, and counting the absence of mitigating factors against Mr. Cooey*

Mr. Cooey asserts that the trial court improperly considered the lack of mitigating factors in determining his sentence. (pp. 30—31). The Ohio Supreme Court dismissed this issue in a single paragraph:

"Cooey correctly asserts that the trial court erred by considering all of the mitigating factors set forth in R.C. 2929.04(B) even though Cooey did not raise some of them.... However, the sentencing opinion lists what the court understood to be the aggravating cir-

cumstances, and the absence of mitigating factors is not among them..... We conclude that the absence of mitigating factors was not impermissibly transformed into an aggravating circumstance." *State v. Cooey,* 544 N.E.2d at 917.

Mr. Cooey now claims that the Ohio Supreme Court failed to consider all the facts, such as that the sentencing opinion contains the following statements:

"The Court then considered and weighed pursuant to R.C. 2929.04(B), the nature and circumstances of the offense, the history, character, and background of the offender, together with each of the seven specified factors." [6] "The Court has given full consideration to the character and record of the Defendant, all mitigating factors, and the circumstances of the offenses." (p. 31, n.21).

These statements, however, are at best circumstantial implications that the trial court considered the absence of mitigating factors.[7] The Ohio Supreme Court's finding is explicit—the absence of mitigating factors was *not* used as an aggravating circumstance. As the federal district court noted in discussing this issue, a federal court must defer to the findings of the state court pursuant to Section 2254(d)— and under the AEDPA version of Section 2254(e), the state court factual findings are "presumed to be correct," unless the applicant rebuts that presumption by "clear and convincing evidence." *Cooey v. Anderson,* 988 F.Supp. at 1094.[8] This statement of

---

**6.** This language is nothing more than a direct quote from Ohio Rev.Code § 2929.04(B). This portion of the trial panel's opinion can be found on p. A–46 of Exhibit C of the record book titled "Respondent's Return of Writ— Exhibits A through VVV."

**7.** Mr. Cooey interprets the phrase "all mitigating factors" as signifying that the trial panel considered all conceivable mitigating factors, even those which did not exist, and then

held the lack of mitigating factors against Mr. Cooey. A better interpretation of the panel's language here would be that it considered "all mitigating factors" *that had actually been demonstrated.*

**8.** Mr. Cooey attempts to argue that the district court erred, that the Ohio Supreme Court's finding was actually fact mixed with law, and that therefore the district court

the law is correct—the Supreme Court has confirmed that a state supreme court's finding as to what the trial court considered is itself a factual determination that is subject to the deference required by Section 2254(d). *Parker v. Dugger*, 498 U.S. 308, 320, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

More to the point, Mr. Cooey presents no reason to think that any constitutional right was violated. Even had the trial court actually considered the absence of mitigating factors, this would have been merely a violation of the Ohio statute at issue (Rev.Code § 2929.04(B)), which the Ohio Supreme Court has held is meant to allow the defendant to raise mitigating factors. *State v. DePew*, 38 Ohio St.3d 275, 528 N.E.2d 542, 557—558 (1988). Thus, no constitutional violation here.

E. *Whether Unlawful Consideration of Invalid Aggregating Circumstances mandates Reversal of Death Penalty* (p. 32ff)

1. *Whether when Invalid Non-Statutory Aggravating Circumstances have been used by the trial court, the Ohio Supreme Court remands for a new sentencing proceeding*

Mr. Cooey alleges that under Ohio law, the Ohio Supreme Court will typically remand for a new sentencing hearing whenever an invalid aggravating circumstance was used. (p. 33). Whether this statement of Ohio law is correct (and Ohio's brief gives good reason to think it is not, see Respondent's proof brief at 24—28), it is ultimately irrelevant at this stage. There is no reason to think that a constitutional violation occurred even if the Ohio Supreme Court chose to reweigh the aggravating circumstances rather than remand for a new sentencing hearing.

should have not deferred. (p. 31, n.20). This seems wrong—the Ohio Supreme Court was

Mr. Cooey attempts to argue that any invalid aggravating circumstance makes the sentence unconstitutional (pp. 32—33). His citations, however, are incomplete. For example, he quotes the following from *Stringer v. Black*, 503 U.S. 222, 232, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992): "But when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale." Mr. Cooey obviously means to imply that the reviewing court is not allowed to reweigh the aggravating circumstances. This implication, however, is belied by the continuation of the above quote, which Mr. Cooey omits: "When the weighing process itself has been skewed, only constitutional harmless-error analysis or *reweighing* at the trial *or appellate level* suffices to guarantee that the defendant received an individualized sentence." *Stringer*, 503 U.S. at 232, 112 S.Ct. 1130 (emphasis added). Thus, the reweighing by the Ohio Supreme Court (see *State v. Cooey*, 544 N.E.2d at 919) sufficed to guarantee that Mr. Cooey got the individualized sentence he deserved.

The other case cited by Mr. Cooey, *Richmond v. Lewis*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), had a similar holding: "Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand." *Id.* at 49, 113 S.Ct. 528. Again, since the Ohio Supreme Court reweighed the factors, Mr. Cooey's sentence should stand against his constitutional challenges. Mr. Cooey fails to provide a substantial

considering the factual issue of what precisely the trial court did in making its ruling.

showing that a constitutional error occurred here.

 2. *Whether Ohio Supreme Court precedents mandate harmless error review when duplicative aggravating circumstances were considered.*

This argument, made on pp. 36ff, is that Ohio precedent requires harmless error review (in which the state must prove the error harmless), rather than plain error review (in which the defendant must show the outcome would have been otherwise). Mr. Cooey here claims nothing more than that the Ohio court did not apply Ohio law correctly—a claim which is not justiciable in federal habeas proceedings. As the Supreme Court said in *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991):

> "[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67—68, 112 S.Ct. 475.

 3. *Whether a Remand is Required because the Ohio Supreme Court never analyzed the Cumulative Effect of the Weighing Errors in this Case*

Mr. Cooey argues (pp. 37ff) that because the Ohio Supreme Court never "conducted any analysis of the cumulative effect" of the weighing errors, it violated his right to "reliable and non-arbitrary decision-making" and to a "fundamentally fair trial."

However, here is the Ohio Supreme Court's discussion of the claim of cumulative prejudice:

> "Cooey argues that the alleged errors he assigns cumulatively prejudiced his cause in the sentencing phase. We have already rejected some of these assign-

ments of error, and some assigned errors were not objected to at the trial or appellate levels. In any event, '[i]t is clear beyond a reasonable doubt that the large body of properly admitted evidence, standing alone, constituted overwhelming evidence . . . .' " *State v. Cooey*, 544 N.E.2d at 915—16.

The federal district court similarly rejected this claim, noting that of the fourteen errors alleged by Mr. Cooey, some had been established as non-errors, and others were procedurally defaulted. *Cooey v. Anderson*, 988 F.Supp. at 1096. Considering the errors which remained, the district court said, "When compared with the weight of other evidence admitted against Petitioner, the cumulative error in Cooey's trial 'pales into relative insignificance.' " *Id.* "In sum, the prosecution in this case has met its burden . . . to prove beyond a reasonable doubt that whatever cumulative error exists did not contribute to the panel's verdict of guilty." Id.

Mr. Cooey presents no additional reason to think that the Ohio Supreme Court or the federal district court erred in their unanimous assessment of the alleged cumulative errors. Thus, there is no substantial showing of a constitutional error here.

 F. *Whether Mr. Cooey's Sentencing was Unfair because the Trial Panel Improperly Applied the Standard for Legal Insanity, and thus failed to Consider Relevant Mitigating Evidence under R.C. 2929.04(B)(3).*

 1. *Whether the Trial Panel Improperly Deemed Evidence of Mental Disorder Irrelevant Unless it Amounted to Insanity*

Mr. Cooey argues that the trial court misstated the mitigating factor for insanity. This factor reads:

"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." R.C. 2929.04(B)(3).

As Mr. Cooey points out (p. 38), the Ohio Supreme Court held that the trial court did misstate this factor by looking at whether Mr. Cooey "completely lacked" the capacity to appreciate his criminality rather than at whether he lacked "substantial capacity." *State v. Cooey*, 544 N.E.2d at 918. What Mr. Cooey leaves out, however, is the Ohio Supreme Court's conclusion that because in any case the lack of capacity must be shown to result from a mental disease or defect, "this mitigating factor would not have applied even under the correct standard," since "the trial court found that Cooey did not have a mental disease or defect." *Id.*

The federal district court took another look at the trial panel's opinion, and came to the opposite conclusion from the Ohio Supreme Court as to whether the trial panel misstated the factor; the district court found "no evidence that the panel acted inappropriately in considering the mitigating factor." *Cooey v. Anderson*, 988 F.Supp. at 1094. The district court went on to confirm that the trial panel's sentencing opinion rested on a psychologist's testimony that "the Defendant was not insane nor psychotic, had no mental defect, that he knew what he was doing was wrong, and he could have conformed to the law." *Id.* at 1094—95 (quoting *State v. Cooey*, No. 86–09–1109 at 5 (Com. Pl. Summit Cty. Dec. 5, 1986)).[9] As the district court held, "Nothing in this discussion reveals any misapplication of the mitigating factor to Cooey's mental capacity," and

therefore this claim "lacks merit." *Id.* at 1095.

The Supreme Court case cited by Mr. Cooey (p. 39), is once again inapposite. *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), held invalid a statutory scheme which absolutely precluded the sentencer from considering certain mitigating factors. But this is an irrelevant point—the Ohio statute did not preclude the sentencer from considering the factor of insanity. Rather, Mr. Cooey's sentencer properly did not consider that factor as mitigating once it was determined that Mr. Cooey did not have a mental disease or defect. We see no plausible allegation of a constitutional error here.

*2. Whether the Ohio Supreme Court Mischaracterized the Trial Panel's Findings and Improperly Refused to Order a New Sentencing Proceeding*

Mr. Cooey then argues (pp. 40—41) that the Ohio Supreme Court mischaracterizes the trial panel as finding that there was no "mental disease or defect." Mr. Cooey admits that the trial panel explicitly found that Mr. Cooey had "no mental defect," but nonetheless claims that Mr. Cooey could still have a "mental disease." The evidence for this? That court-appointed psychologist Dr. Siddall found that Mr. Cooey had a "conduct disorder and a mental disorder caused by substance abuse." (This finding is quoted in *Cooey v. Anderson*, 988 F.Supp. at 1094—95). Mr. Cooey now claims that this is evidence of a mental disease, and that the Ohio Supreme Court erred in concluding that the panel had found there was no mental disease.

We consider this contention meritless. The psychologist, Dr. Siddall, testified that

---

9. This language can be found in Trial Panel's Opinion at A–47, Exhibit C, Respondent's Re- turn of Writ—Exhibits A through VVV.

Mr. Cooey had no mental defect. He also responded "No" when the prosecution posed the following question, "[W]e certainly have a detailed definition of mental illness in Ohio, at least the Ohio statute defines ... what it is supposed to mean; and by that definition this Defendant certainly is not mentally ill, is he?" (Tr. Vol.VIII, p. 42—43). Even if it were true that this testimony left open the possibility that Mr. Cooey had a mental disease, that would still be unavailing. The mitigating factor of Ohio Rev.Code § 2929.04(B)(3) requires not merely that the defendant have a mental disease or defect, but that because of that mental disease or defect the defendant "lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Dr. Siddall's testimony showed that Mr. Cooey "knew what he was doing was wrong, and ... he could have conformed to the law." *Cooey v. Anderson*, 988 F.Supp. at 1095.[10] Thus, even if Mr. Cooey had some unidentified and undiagnosed mental disease, he still failed to demonstrate that the mitigating factor of § 2929.04(B)(3) applied to him.

Moreover, the issue of what the trial court found is a factual issue, and the state supreme court's findings on that issue are entitled to deference under Section 2254(d) and (e). *Parker v. Dugger*, 498 U.S. 308, 320, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). Those sections require that a state court's factual finding not be disturbed unless

there was an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2), or unless the habeas petitioner demonstrates the factual findings incorrect by "clear and convincing evidence," § 2254(e). Mr. Cooey does not do so here.

G. *Whether Mr. Cooey is Entitled to a Reversal of his Sentence due to the Cumulative Effect of these Weighing Errors*

1. *Neither the Federal Court nor the Ohio Supreme Court can Reweigh the Aggravating and Mitigating Factors*

Mr. Cooey makes this argument on pp. 43ff. As to the federal court, this may or may not be correct, but it is irrelevant because the federal court did not reweigh the aggravating and mitigating factors; rather, it affirmed the Ohio Supreme Court's reweighing.

As a matter of Ohio law, Mr. Cooey is wrong to suggest that "Ohio appellate courts have no power to reweigh." (p. 44). The very statute that Mr. Cooey quotes on p. 46 says:

"The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they *shall review and independently weigh* all of

---

**10.** The trial transcript (at Vol. VIII, pp. 57—58) shows the following exchange between the government's lawyer and Dr. Siddall:

Q. "Do you think he had the capacity to appreciate his criminality?"
A. "Yes."
Q. "Do you think he had the ability to conform his conduct as to the requirements of the law?"
A. "I examined him in respect to the insanity statute, which is very similar to what we are talking about. I did not feel that he met the insanity criteria."

Q. "So, in answer to my question, would it be fair to say that he could conform his conduct to the requirements of the law?"
A. "I would say that he certainly knew that what he was doing was wrong."
Q. "Do you feel that he could conform his conduct—I know—
A. "Yes."
Q. "That he could conform his conduct to the requirements of the law?"
A. "Yes."

the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate." Ohio Rev.Code § 2929.05(A) (emphasis added).

Thus it is absolutely clear that under Ohio law, the appellate courts are not merely allowed but *required* to "independently weigh" the aggravating circumstances versus the mitigating factors. The Ohio Supreme Court reweighed the valid aggravating circumstances against the mitigating factors in an extended and thoughtful analysis. See *State v. Cooey*, 544 N.E.2d at 919—20. The federal district court is clearly correct in concluding that "the Ohio Supreme Court acted properly when, pursuant to § 2929.05, it elected to reweigh the aggravating circumstances and mitigating factors of this case." *Cooey v. Anderson*, 988 F.Supp. at 1098. Given that the Supreme Court has affirmed the practice of state appellate reweighing, see *Clemons v. Mississippi*, 494 U.S. 738, 754, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), we see no conceivable constitutional violation here.

### 2. Whether the Ohio Supreme Court has mandated reversal for certain errors in the past, and therefore reweighing is arbitrary as to such errors

Mr. Cooey asserts, without citing any Ohio Supreme Court cases, that the Ohio Supreme Court has "established a practice of refusing to utilize harmless error or independent weighing" in certain unidentified situations. (p. 47—48). Thus, the Ohio Supreme Court has applied reweighing inconsistently and arbitrarily.

This claim is meaningless without some concrete examples, and moreover seems to assert nothing more than that the Ohio Supreme Court misapplied state law. We find no constitutional error here.

### 3. Whether the Ohio Supreme Court Failed to meet Constitutional Standards for Reweighing.

Mr. Cooey asserts (p. 48) that the Ohio Supreme Court made a "purely conclusory assertion" that the aggravating circumstances, weighed separately, outweigh the mitigating factors, and that this leaves no assurance that the court actually performed a new sentencing calculus. *Id.* (citing *State v. Cooey*, 544 N.E.2d at 917). In focusing on one isolated sentence taken out of context, Mr. Cooey fails to note that the Ohio Supreme Court repeatedly and thoroughly reweighed the aggravating factors. See *State v. Cooey*, 544 N.E.2d at 918—19. There is no constitutional error here.

### 4. Whether "Even If A Harmless Error Review Could Be Conducted Respecting These Errors, That Determination Is For the Ohio Supreme Court, and a Remand Must be Ordered To That Court For Such a Review"

Mr. Cooey argues that this court should remand his case to the Ohio state court system for harmless error review (pp. 48ff), alluding in a footnote (on p. 49) to a Supreme Court holding that harmless error review is constitutionally required. Here is what the Supreme Court actually said:

"Use of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing in the state judicial system." *Stringer v. Black*, 503 U.S. 222, 237, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

Because the Ohio Supreme Court clearly performed a reweighing (indeed, Mr. Cooey has already lambasted the Ohio Supreme Court for doing just that), this constitutional standard has been satisfied (assuming that any aggravating factor was vague in the first place).

Mr. Cooey then argues that if the federal court performs a harmless error review, the *Chapman* standard should apply (p. 50). Because this argument is not aimed at describing any alleged constitutional violation in the past, but rather at dictating the legal standard for analyzing his claims, it should not be part of any certificate of appealability.

### 5. Whether under Harmless Error Review, Mr. Cooey is Entitled to Reversal of his Death Sentence

Mr. Cooey then argues that under any harmless error review, his sentence should be overturned because when the "invalid and duplicative aggravating circumstances are removed," there is "eighty-five percent" less weight on the aggravating factor side. (p. 54). In making this curious mathematical calculation, he excludes aggravating factors that have already been upheld numerous times; for example, he excludes the aggravating factor for "principal offender" because it is too vague (a claim that has been and should still be rejected), and by excluding the duplicative aggravating factor under R.C. 2929.04(A)(3) (a claim that the Ohio Supreme Court found both procedurally barred and not plain error). The Ohio Supreme Court reweighed all the valid aggravating circumstances and found that they "outweigh,

beyond a reasonable doubt, the mitigating factors." *State v. Cooey*, 544 N.E.2d at 919. Mr. Cooey presents no constitutional reason to disturb this reweighing.

### 6. Whether the Extensive Mitigation in This Case Further Demonstrates the Injurious Effect of the Panel's Weighing Errors

Mr. Cooey then argues that he has many mitigating factors, such as his age (19),[11] his lack of a criminal record, his physical abuse as a child, and his use of alcohol and drugs [12] (p. 55). He argues that with various aggravating factors excluded (a spurious claim, as noted above), the balance of aggravating vs. mitigating factors shows that a harmful error occurred, and that he must receive a new sentencing hearing.

Mr. Cooey also quotes, with emphasis, a statement by the Ohio Supreme Court that the various mitigating "factors tend to suggest that Cooey may have been less responsible for his acts than were most people." (p. 56, citing *State v. Cooey*, 544 N.E.2d at 919). He fails to complete this quote:

"However, [the mitigating factors] are outweighed beyond any reasonable doubt by the aggravating circumstances of rape and kidnaping. Cooey used deceit to lure Wendy and Dawn into his car, drove them to a deserted area, then took what he wanted from them by force. He beat them repeatedly with a nightstick, then tried to make sure Wendy was dead by strangling her. We conclude that the properly admitted evi-

---

**11.** The trial panel did say that it "considered his immaturity" as a mitigating factor. Trial Panel's Opinion at A–47, Exhibit C, Respondent's Return of Writ—Exhibits A through VVV.

**12.** The trial panel found that although Mr. Cooey testified that he "used alcohol, cocaine,

opium, and marijuana in the 12 hours prior to the murders," there was "no evidence that the Defendant consumed alcohol or drugs during the three hours that he was with the girls prior to their death. There was also no evidence that he was not in control of his faculties from the time the girls were picked up until they were killed." *Id.* at A–49.

dence overwhelmingly proves that the aggravating circumstances outweigh, beyond a reasonable doubt, the mitigating factors." *State v. Cooey,* 544 N.E.2d at 919.

Again, Mr. Cooey does not make a substantial showing of a constitutional violation here.

### III. Whether the Trial Court Improperly Considered Inadmissible and Prejudicial Material, and the Death Sentence should therefore be Reversed.

A. *Whether the Panel Denied Defense Counsel [Access] to the Victim Impact Statements, thus Violating Mr. Cooey's Right to Due Process;* and

B. *Whether the Trial Court Erred in Considering Victim Impact Statements in Which the Victim's Families called for the Death Penalty*

Mr. Cooey argues that a capital defendant is denied due process "when the death sentence was imposed, at least in part, on the basis of information that he had no opportunity to deny or explain." (p. 56, quoting *Gardner v. Florida,* 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)). He claims that the trial panel received victim impact statements, that the panel considered these statements in determining sentences (at least those for the non-capital offenses), that his counsel repeatedly asked for access to these statements, and that his counsel never received these statements until the case had reached the Ohio Supreme Court (p. 57). He also argues, in a related section that we examine here as well, that the trial court considered victim impact statements which called for the death penalty, (p. 61), and that this violates the Supreme Court's Eighth Amendment decisions of *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96

L.Ed.2d 440 (1987) and *Payne v. Tennessee,* 501 U.S. 808, 830 n. 2, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (noting that *Booth* "held that the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment").

Viewed in its strongest light, here is the evidence for Mr. Cooey's arguments. As the federal district court noted, the prosecution prepared three victim impact statements, two of which specifically called for a sentence of death. *Cooey v. Anderson,* 988 F.Supp. at 1089. Moreover, the trial court declared that it would consider the statements, saying, "What is contained in the presentence investigation will be considered in this particular case for sentencing. That includes the victim impact statement which was prepared concurrently with the PSI, that will also be considered in mitigation and in sentencing." *Id.* (quoting Tr. Vol. VIII at 12—13). Mr. Cooey also quotes a statement by a judge to the effect that "you [Mr. Cooey] will never know the degree of pain that you have inflicted on the families of Wendy and Dawn." (p. 58). On this basis, Mr. Cooey alleges that if the panel truly considered the victim impact statements (which he had not received), that was a due process violation because he had no chance to deny, rebut or explain the information therein. (p. 57, citing *Gardner,* 430 U.S. at 362, 97 S.Ct. 1197).

On the other hand, Mr. Cooey himself quotes an "attachment" to the trial panel's opinion, which stated that the court "was furnished with victim impact statements as required by R.C. 2947.051 and they were considered as required by R.C. 2929.12. *However, they had no bearing on the decision of the Court as to the death penalty.*" (p. 58) (emphasis added). Based on this disavowal of any use of the victim impact statements in applying the death sentence, the Ohio Supreme Court found that there

was "no affirmative indication that the victim impact statements were considered in sentencing Cooey to death," and that "this analysis also disposes of Cooey's argument that he was prejudiced by not being allowed to see the victim impact statements at trial." *State v. Cooey*, 544 N.E.2d at 913.

Because of the Ohio Supreme Court's clear finding of fact regarding the trial court's decisionmaking process, the federal district court said that Section 2254(d) required it to "defer to the finding of the Ohio Supreme Court and refrain from independently assessing the merits of Cooey's eighth claim." *Cooey v. Anderson*, 988 F.Supp. at 1091. And this was under pre-AEDPA law— § 2254(e) now requires the federal court to presume correct any factual findings of a state court, unless the habeas applicant demonstrates to the contrary by "clear and convincing evidence." Moreover, the federal district court noted that Mr. Cooey's claim that he was wrongly denied access to the statements was unwarranted, because he had no such right if the statements were never considered in the first place. *Id.* at 1091—92.

In sum, Mr. Cooey offers no reason to think that the federal district court committed a constitutional violation by deferring to the Ohio Supreme Court's factual findings.

### C. Whether the Presentence Investigation Report Contained Irrelevant and Prejudicial Information

Mr. Cooey argues once again that the presentence investigation report contained irrelevant and prejudicial information, and that because the trial court stated that it would consider "what is contained in that presentence investigation" (quoted in

Cooey v. Anderson, 988 F.Supp. at 1089), Mr. Cooey's sentencing was unfair. Here are the items of prejudicial information that were allegedly considered (pp. 62ff):

- The statement of an Akron police captain that the death penalty was appropriate. The Ohio Supreme Court already held this "error harmless beyond a reasonable doubt" because the trial court did not "place any reliance on the captain's recommendation." *State v. Cooey*, 544 N.E.2d at 914. The federal district court similarly found that even though the panel of judges considered the presentence investigation, there is no evidence that this specific item caused them to look more favorably on the death penalty. *Cooey v. Anderson*, 988 F.Supp. at 1089.

- The inclusion of an assault charge against Mr. Cooey that was dismissed, and an allegation of sexual misconduct that was never charged. (p. 63). The Ohio Supreme Court held that "[w]hile such offenses may not be part of one's 'criminal record' under Crim. R. 32.2(B), the same rule requires the inclusion of a defendant's 'social history' in the report. The incidents referred to in the report were an assault in which the victim's jaw was broken and a sexual assault on a two-year-old. Whether or not they resulted in criminal charges, these occurrences are part of Cooey's social history." *State v. Cooey*, 544 N.E.2d at 914. The federal district court agreed with this holding. *Cooey v. Anderson*, 988 F.Supp. at 1089.

- Various inculpatory statements made by Mr. Cooey to a psychiatric examiner named Dr. Quinn (namely, that he hit the victims with a nightstick), the inclusion of which was improper because prohibited by an Ohio statute.[13] (p. 64). The

13. Ohio Rev.Code § 2945.39(D) provides that "[n]o statement made by a defendant in an examination or hearing relating to his mental condition at the time of the commission of an offense shall be used in evidence against him on the issue of guilt in any criminal action."

Ohio Supreme Court agreed that the inclusion of this statement in the presentence investigation report violated the statute. However, the Ohio Supreme Court held as follows:

"We do not ... find it plain error. Dr. Quinn was not the only one to whom Cooey admitted that he hit the victims. There was abundant evidence ... that Cooey was a principal offender. Cooey admitted to police that he choked Wendy. He admitted to Terry Grant that he beat both women with a nightstick. Finally, David Jones testified that Cooey confessed to personally killing the women. In the face of this evidence, we cannot accept that the court clearly would have found, but for the error, that Cooey did not strike the women with the nightstick. Nor is it clear that, even if it had so found, it would have spared Cooey's life." *State v. Cooey*, 544 N.E.2d at 911.

The federal district court agreed that there was no indication that the trial panel relied on this improperly admitted statement in making its findings or imposing the sentence of death. *Cooey v. Anderson*, 988 F.Supp. at 1089. Moreover, the admission of the inculpatory statements was merely a violation of Ohio statutory law, which is not reviewable in federal habeas proceedings.

In sum, Mr. Cooey offers no reason to suspect a constitutional violation in the federal district court's handling of this claim.

> D. *Whether Mr. Cooey was Denied his right to Fair Sentencing when he was Denied his Right of Allocution*

The federal district court noted that Mr. Cooey did not raise this claim on direct appeal, that the Ohio appellate court had denied it as res judicata (*State v. Cooey*, 1994 WL 201009 at *5), and that Mr. Cooey failed to establish cause for his procedural default. *Cooey v. Anderson*, 988 F.Supp. at 1093. This seems just a straightforward and unexceptional procedural default analysis by the district court. Moreover, the Sixth Circuit has noted that "[t]here is no constitutional right to allocution under the United States Constitution." *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir.1997) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). Thus, this claim should not be part of any certificate of appealability.

> E. *Whether the Trial Court Improperly Admitted Gruesome Slides and Considered them for Sentencing*

Mr. Cooey asserts that because the Ohio Supreme Court held that four of the 26 color slides admitted were in fact repetitive and should have been excluded, the death penalty was imposed on caprice or emotion rather than reason, and that Mr. Cooey therefore deserves a new sentencing or evidentiary hearing. (p. 66).

This seems a non sequitur. The Ohio Supreme Court described 11 of the 26 slides as not gruesome, the 15 remaining slides as "unpleasant" but "highly probative," and four of the 15 as "repetitive." *State v. Cooey*, 544 N.E.2d at 915. The Ohio Supreme Court also said that given the "overwhelming evidence of Cooey's guilt ... their admission was harmless error." *Id.* The federal district court agreed that Mr. Cooey had failed to show either that the only value of the photographs lay in their appeal to emotions or whims or that the photographs in fact did

appeal to the panel's emotions in this case. *Cooey v. Anderson,* 988 F.Supp. at 1083.

There is no reason to suspect a constitutional violation as to this claim.

F. *Whether Mr. Cooey's Right to a Fair Sentencing Determination was Violated by Prosecutorial Misconduct at Both Phases of the Trial*

Mr. Cooey alleges that the prosecutor made various and sundry statements that were designed to inflame the emotions of the trial panel. (p. 67). However, as the Ohio Supreme Court noted, Mr. Cooey failed to object to these statements at trial, and under Ohio's contemporaneous objection rule, the appeals court would look at the statements only for "plain error." *State v. Cooey,* 544 N.E.2d at 910. Applying this standard, the Ohio court held that the "reference was brief, the evidence overwhelming, and the case was tried to a three-judge panel. It is far from clear—indeed, it is highly unlikely—that the outcome would have been otherwise absent the statements of the prosecutor." *Id.* The federal district court considered the Ohio Supreme Court's finding as deserving deference under Section 2254(d) (*Cooey v. Anderson,* 988 F.Supp. at 1087 n. 7), and further held that Mr. Cooey had failed to establish any adequate cause for failing to object at trial (including Mr. Cooey's claim of ineffective assistance of counsel). *Id.* at 1086.

Without any demonstrable prejudice to his case from the allegedly inflammatory statements, and without any cause for failing to object to the statements at trial, Mr. Cooey is procedurally barred from raising this claim now. We see no constitutional error in the district court's disposition of this issue.

IV. **Whether the District Court Erred When it Found that the Errors which Occurred at the Trial Phase did not Deny Mr. Cooey the Right to a Fair Trial**

A. *Whether Mr. Cooey's Waiver of a Jury Trial was not Knowing, Intelligent, and Voluntary* (p. 69ff)

The Sixth Circuit has construed the constitutional requirement as follows:

"[T]he only requirements for a criminal defendant to validly waive his right to a trial by jury are that (1) the waiver must be in writing; (2) the government attorney must consent to the waiver; (3) the trial court must approve the waiver; and (4) the defendant's waiver must be voluntary, knowing and intelligent." *Jackson v. Burt,* 99 F.3d 1139, 1996 U.S.App. LEXIS 27358 (6th Cir.1996) (citing *United States v. Martin,* 704 F.2d 267, 271 (6th Cir.1983)).

Mr. Cooey argues further that in order for a waiver of the 6th Amendment jury trial right to be valid, the "waiver must be in writing, signed by the defendant, filed, and made a part of the record." (p. 70, citing *State v. Pless,* 74 Ohio St.3d 333, 658 N.E.2d 766 (1996), syl. 1). This is, of course, an additional state law requirement, not a federal constitutional requirement. Thus, even if accurate in his depiction of state law (and the state asserts that he is not, see State's brief at 61—62), this specific claim would not be justiciable in a federal habeas proceeding.

Applying the federal constitutional standard, there is good evidence that Mr. Cooey *did* waive his right knowingly and voluntarily.

At a pretrial hearing, the following exchange took place between the judge and Mr. Cooey and his lawyers:

"Mr. Whitney: 'Your Honor, I would indicate to the Court that both Mr.

Davidson and I have discussed this matter of the Jury—this Defendant's constitutional right to have a Jury try this case. We have discussed this for a month or so."

"The Defendant: 'Yeah.'

"Mr. Whitney: 'And I would indicate that the Defendant has talked with his father about this. And, he is also present in the courtroom. He has talked with other people and ourselves and I think that he understands what his constitution rights are in terms of a jury. I think he understands all of the ramifications of the waiver of such a right. and he has instructed us, at this time, and in fact we have discussed with him our recommendations, which I'm sure he has taken into consideration, he has indicated to both Roger and myself that he wishes to enter a waiver of that constitutional right to trial by Jury and he's willing to sign a written waiver of that right before this Court this morning.'

"The Court: 'Okay. Mr. Cooey, you do understand that you have a constitutional right to a jury trial?'

"The Defendant: 'Yes sir.'

"The Court: 'And after discussions with your attorneys and your family, you have agreed to waive that right voluntarily.'

"The Defendant: 'Yes sir.' "

(Tr. Vol. IV at 2—3.); see also *Cooey v. Anderson*, 988 F.Supp. at 1076.

The federal district court held that Mr. Cooey's argument that his waiver was not knowing/intelligent/voluntary was not barred by res judicata under Ohio law. *Id.* at 1077—78. Then it discussed the case of *Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), in which the Court (while holding that a de-termination of whether a defendant was "in custody" is mixed law and fact) referred to the "determination of a defendant's competency" as a factual question. *Cooey v. Anderson*, 988 F.Supp. at 1078 (quoting *Keohane*, 116 S.Ct. at 466). The district court then said, "In light of *Thompson*, the court finds that a trial court's determination of the knowing and voluntary nature of a jury waiver constitutes a factual determination entitled to deference under § 2254(d)." *Id.* Moreover, Mr. Cooey was held not entitled to a new evidentiary hearing under (the pre-AEDPA) § 2254(d). *Id.* at 1079.

Mr. Cooey makes no substantial showing that the disposition of this issue violated any constitutional right. On the merits, the trial court seems to have acted well within its discretion in finding that Mr. Cooey's waiver was knowing and voluntary. Mr. Cooey told the court that he understood his constitutional right to a jury and was waiving that right only after conversations with his attorneys and lawyers.[14] The federal district court was correct in giving this factual finding deference under Section 2254(d).

An additional note—Mr. Cooey claims that an "evidentiary hearing is necessary to determine" whether his trial attorney informed him of the full implications of waiving the jury trial right. (p. 71). We find this assertion implausible on its face. Whatever Mr. Cooey's attorney told him or failed to tell him is a fact that is wholly within the possession of Mr. Cooey, and no evidentiary hearing would be necessary for Mr. Cooey to discover such a fact. Moreover, the Ohio appellate court, on collateral review, found as follows: "Defendant failed to present any evidence regarding what his

14. Mr. Cooey certainly should have been able to understand the ramifications of his decision. A psychological examiner noted that his IQ was consistently in the range of 110— 115 (Tr. Vol. I, Exhibit A)—and given that the national average is 100 with a standard deviation of 15, this score would indicate that Mr. Cooey's intelligence is well above average.

trial lawyers told him, or failed to tell him, regarding waiver of his right to jury trial." *State v. Cooey*, 1994 Ohio App. LEXIS 2281 at *35. Mr. Cooey has already had the chance to produce evidence as to this claim, and has failed to do so.

### B. Whether the Method of Selecting the Three–Judge Panel was Improper

Mr. Cooey resuscitates the claim that the trial panel was chosen improperly (p. 72) because the trial court judge to whom Mr. Cooey's case was assigned chose the other two judges, despite a state requirement that the "presiding judge of the county court" select the other two judges. This procedural aberrance, claims Mr. Cooey, was a violation of due process, allowed the death penalty to be imposed arbitrarily and capriciously, and possibly resulted in bias (because the other two judges had heard another death penalty case "only months earlier").

The federal district court disposed of this implausible claim quickly, holding that a violation of the selection statute did not implicate due process rights and that there was no evidence that the trial judge actually chose the other two judges in the first place. *Cooey v. Anderson*, 988 F.Supp. at 1081. Moreover, the court noted that the Ohio Supreme Court has interpreted the Ohio selection statute as *allowing* the trial court judge to select the other two judges—so even if Mr. Cooey's allegation were correct, the trial judge would have been within the law's requirements. *Id.* (citing *State v. Eley*, 77 Ohio St.3d 174, 672 N.E.2d 640 (1996)). Moreover, as with two earlier claims, Mr. Cooey here claims nothing more than that the Ohio court did not apply Ohio law correctly—a claim which is not justiciable in federal habeas proceedings.

We see no conceivable constitutional violation here.

### V. Whether the District Court Erred in Determining that Petitioner Cooey Had Procedurally Defaulted on His Claims

Mr. Cooey argues that because the Ohio Supreme Court examined some of his claims for "plain error," those claims were therefore not procedurally defaulted, and the federal district court was incorrect to treat them so. (pp. 73—74). This argument is meritless, as discussed above. The Sixth Circuit noted just this year that "[c]ontrolling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542, 2000 U.S.App. LEXIS 20170, at *32 (6th Cir.2000).

Mr. Cooey then argues that it was unfair to apply plain error review to his claims, because the Ohio Supreme Court had not clearly announced or firmly established such a practice as of the time Mr. Cooey litigated his appeals. (p. 75). However, Mr. Cooey himself quotes a 1986 Ohio Supreme Court case as holding that "since the instant argument was neither raised before, nor ruled on by, the court of appeals, this court is not required to address it on the merits." *Id.* (quoting *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922, 925 (1986)). Mr. Cooey then claims that he was never informed that plain error analysis would apply, because the Ohio Supreme Court had said only that a claim "need not be heard for the first time on appeal." *Id.* We find it hard to imagine what clearer indication the Ohio Supreme Court could have given that it was not bound to consider claims that were raised for the first time on appeal. The fact that it chooses to review such claims for plain error is a *benefit*, not a detriment, to appellants such as Mr. Cooey. At any rate, there is no hint that any standard other plain error might be constitutionally required.

Mr. Cooey then argues that the plain error standard is "so contrary to state law and to legitimate state interests that ... it should be discarded as it is not supported by adequate state grounds." He claims that Rev.Code 2929.05(A) requires the Ohio Supreme Court to determine whether the sentencing court properly weighed the aggravating circumstances, and that this in turn requires that court to do more than plain error review. This argument is a non sequitur. The Ohio Supreme Court can fulfill its statutory obligations by examining whether the trial court made a *plain error* in its weighing of the aggravating circumstances. Moreover, whether an adequate state ground exists is a question of whether the state court made its decision on federal grounds or on state law grounds, not of whether the state court followed its own standard of review. Finally, as the Fourth Circuit has held (in a decision quoted by the Sixth Circuit just this year), "a federal court may only in-

quire into whether cause and prejudice exist to excuse the default, not into whether the state court properly applied its own law." *Barnes v. Thompson,* 58 F.3d 971, 974 n. 2 (4th Cir.1995) (quoted in *Taqwiim v. Johnson,* 229 F.3d 1154, 2000 U.S.App. LEXIS 22254, at *10—*11 (6th Cir.2000)).

Mr. Cooey also makes a few other arguments about the applicability of plain error review, but we think they are not worth discussing—whatever standard of review the Ohio Supreme Court applied, Mr. Cooey does not demonstrate that any court made a constitutional error in holding some of his claims procedurally defaulted.

## VI. Whether Mr. Cooey was Denied Effective Assistance of Counsel

To establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defense as to render the trial unfair and the result unreliable.[15] *Strick-*

---

**15.** Mr. Cooey provides a disquisition on the proper application of the cause and prejudice standard to his ineffective assistance of counsel claim. (p. 84). He makes several arguments, none of them valid.

First, he argues (p. 84) that the federal district court improperly prejudged the cause/ineffectiveness issue for all his claims when it decided that issue for his first such claim. He points to language stating that "Cooey is precluded from establishing cause on the basis of such alleged ineffectiveness for this or any other procedural default ...." *Cooey v. Anderson,* 988 F.Supp. at 1087. Mr. Cooey alleges that this language indicates that the district court predetermined the cause/ineffectiveness issue for all his other claims. We find this argument meritless. The district court *did* consider whether Mr. Cooey could establish cause and prejudice for other issues which he raised. See, *e.g., id.* at 1088, 1094.

Second, Mr. Cooey asserts that the district court improperly demanded a "showing of actual prejudice" rather that a "reasonable probability of a change in the outcome." (p. 85). Mr. Cooey misstates the law. The Sixth Circuit, following the Supreme Court, has

clearly held that a showing of "actual prejudice" is required: "Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate ... that he was *actually prejudiced* by the alleged constitutional error." *Maupin v. Smith,* 785 F.2d 135, 138 (1986); see also *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994) ("The petitioner must also prove that he was actually prejudiced by the claimed constitutional error.") (citing *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (a petitioner shoulders "the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions")).

Third, Mr. Cooey argues that the district's "analysis of the reasonable probability of a change in the outcome [remember, this is an analysis that Mr. Cooey just accused the district court of failing to perform at all] needed for cause/ineffectiveness impermissible devolves into whether the evidence was suffi-

*land v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984). The standard of review for the district court's findings of fact is clear error, *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052; *Blackburn v. Foltz,* 828 F.2d 1177, 1181 (6th Cir.1987), while the performance and prejudice components of the Strickland test are considered mixed questions of law and fact, and are thus subject to *de novo* review. Strickland, 466 U.S. at 698, 104 S.Ct. 2052.

The habeas petitioner bears the burden of proving that "he was actually prejudiced by the claimed constitutional error." *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994). What is more, it is not enough for the defendant to show that the outcome of the trial might have been different had counsel performed more adequately—he must show that the outcome of the trial was actually unfair or unreliable. As the Supreme Court noted in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993):

> "[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id.* at 369—70, 113 S.Ct. 838 (footnote omitted).

cient to support the panel's verdicts of guilty and death." (p. 85). Mr. Cooey cites the district court as stating that there "is ample evidence to support the panel's verdict." *Id.* This is a mystifying argument. If there is ample evidence to support the verdict, then there is very likely not a reasonable probability that the alleged errors would have changed the outcome. Moreover, since the true inquiry should be whether the outcome was fair and reliable, the fact that ample evidence supports the outcome shows fairness and reliability.

We think this claim should fail because Mr. Cooey cannot demonstrate that the outcome of his trial was prejudiced by any such failure of his counsel, much less that the outcome of the trial was unfair or unreliable as a result. To repeat from our discussion of Mr. Cooey's earlier claim about the specifications themselves: The Ohio Supreme Court did agree that the "specifications for which Cooey was trying to escape accountability [Section 2929.04(A)(3)]... are the same as those that support his convictions of the felony murder specifications [Section 2929.04(A)(7)]." *State v. Cooey,* 544 N.E.2d at 917. However, the Ohio Supreme Court went on to say, "Cooey did not raise this error in the court of appeals, and we find it far from clear that it affected the panel's verdict. We therefore cannot hold it plain error." *Id.* On the basis of this procedural default, the federal district court declined to hear the underlying claim. *Cooey v. Anderson,* 988 F.Supp. at 1087—88. The district court also noted that "the evidence confirming the aggravating circumstances of Cooey's offenses is overwhelming." *Id.*

Moreover, the Ohio appellate court, on collateral review, found as follows:

> "The Ohio Supreme Court reviewed this claim and found that the failure of the trial court to merge the aggravating circumstances at issue was not plain error. This Court concludes that there also was not a 'reasonable probability' that defen-

Finally, Mr. Cooey argues that if the allegedly invalid aggravating factors had been challenged, the Ohio appellate court would have found an error in the weighing process. (p. 86). Again, this is a mystifying argument, given that (as discussed earlier) the Ohio Supreme Court explicitly reweighed all the aggravating factors against the mitigating factors and found that Mr. Cooey's sentence was justified. (Mr. Cooey is surely aware of this, for he complained earlier that the Ohio Supreme Court should *not* have done such reweighing.)

918

dant was prejudiced by his trial lawyers' failure in regard to the merger of aggravating circumstances." *State v. Cooey*, 1994 WL 201009, 1994 Ohio App. LEXIS 2281 at * 41. (Ohio Ct.App., May 25, 1994).

We defer to this factual finding under Section 2254(d).

> B. *Whether Mr. Cooey's Counsel was Ineffective in Failing to Prevent Other Prejudicial Influences and to Present Relevant Mitigating Evidence*

Mr. Cooey brings several tenuously-connected arguments under this heading (starting on p. 87). First, he argues that the federal district court failed to give adequate consideration to his 19 claims of ineffective assistance of counsel. The district court's disposition of these claims (after a single-spaced page of legal discussion) was as follows:

> "Nevertheless, upon its own independent review of the individual claims, including those not considered by the state courts, this court find that each lacks merit with respect to the requirements under *Strickland.* In particular ... Cooey fails to establish that he suffered prejudice from any alleged deficiency, in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the court finds that the assistance of counsel provided to Cooey was entirely effective ...." *Cooey v. Anderson*, 988 F.Supp. at 1099.

Mr. Cooey alleges that this "overwhelming evidence" standard is incorrect because it is too much like a sufficiency-of-the-evidence standard. He cites a Supreme Court case that is inapposite. Here is a full quotation from the case he cites:

> "The second aspect of *Bagley* materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after

discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 434—35, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

This case, however, dealt with the situation in which the prosecution concealed evidence favorable to the defendant—given such misconduct, the Court said, the defendant need not demonstrate that all the evidence taken as a whole would be insufficient to convict; he need only demonstrate that the concealed evidence (if seen) would undermine confidence in the verdict. The Court's disavowal of the sufficiency-of-the-evidence inquiry simply has nothing to do with cases like Mr. Cooey's, in which the inquiry is whether an attorney's alleged ineffective performance prejudiced the outcome of the case. Even if the language in *Kyles* applied to this inquiry, the fact that the federal district found "overwhelming evidence" to support the verdict shows that any alleged error did not "undermine confidence in the verdict."

Mr. Cooey also alleges that much of the "overwhelming evidence" was improperly admitted (p. 88), but this assertion is belied by the district court's handling of Mr. Cooey's other claims about that evidence.

Mr. Cooey then argues that his trial counsel was ineffective in the following specific instances:

▲ In failing to advise him of the full implications of waiving his right to a jury trial. (p. 89). Once again,

though, Mr. Cooey mysteriously fails to assert that his trial counsel *actually* failed to inform him of anything; he merely avers that he needs an "evidentiary hearing" to inquire further. We see this as a wholly dilatory tactic. Moreover, the Ohio appellate court, on collateral review, found as follows: "Defendant presented no evidence to support this assertion. Accordingly, he failed to show that his trial lawyers' performance fell below an objective standard of reasonable representation." *State v. Cooey,* 1994 WL 201009, 1994 Ohio App. LEXIS 2281 at *38. This factual finding deserves deference under Section 2254(d).

▲ In failing to object to the empaneling of the three judges. s. (p. 89). This is a meritless claim, given that the empaneling was not improper, as discussed above. Moreover, Mr. Cooey does not make even the slightest showing of prejudice to his case from the empaneling methodology.

▲ In failing to object to the "unnecessary, cumulative, irrelevant, and prejudicially gruesome slides." (p. 90). Here, Mr. Cooey misrepresents the federal district court's opinion. He claims that the district court found that "15 of the 26 slides introduced at trial 'were gruesome, rendering the trial court in violation of the Supreme Court's edict in *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) "that any decision to impose the death penalty be, and appear to be, based on reason rather than caprice or emotion." ' " (p. 90, citing *Cooey v. Anderson,* 988 F.Supp. at 1083). This quotation is accurate enough, as far as it goes. But Mr. Cooey leaves out two crucial words

that preceded this quotation: "Cooey asserts." The district court was merely restating Mr. Cooey's argument, yet Mr. Cooey now attempts to pass off his argument as the district court's own finding. Moreover, as discussed above, the district court actually held that the fact that four of the slides were repetitive did not prejudice the ultimate verdict. *Cooey v. Anderson,* 988 F.Supp. at 1083. And the Ohio appellate court, on collateral review, found as follows:

"There is no 'reasonable probability' that defendant was prejudiced by his trial lawyers' failure to object to the admissibility of the photographs at issue." *State v. Cooey,* 1994 WL 201009, 1994 Ohio App. LEXIS 2281 at *38.

This finding deserves deference under Section 2254(d).

▲ In failing to object to the grand jury indictment, which was allegedly not signed by the foreman of the grand jury. (p. 90). This claim is meritless, since the Ohio Supreme Court found that although the signed indictment was not originally part of the appellate record, it was later included after the other papers were journalized.[16] Thus, "that it was journalized at all requires us to accept it as genuine and as having been filed at the time indicated by the date stamp, for the journal of a court of record imports absolute verity absent clear and convincing evidence to the contrary." *State v. Cooey,* 544 N.E.2d at 909– 10. The federal district court gave deference to this factual finding as required by the (pre-AEDPA) Section 2254(d). *Cooey v. Anderson,* 988 F.Supp. at 1100.

16. The signed grand jury indictment is included as Exhibit A in the record book titled

"Respondent's Return of Writ—Exhibits A through VVV."

▲ In requesting a presentence investigation report (p. 91), thus opening "the door for the trial panel to learn prejudicial information about Mr. Cooey and be exposed to a highly prejudicial opinion respecting Mr. Cooey's punishment" (namely, the police sergeant's opinion that the death penalty should be the punishment). Mr. Cooey did present a signed affidavit from a criminal defense lawyer, in which the lawyer opined that under "*no circumstances* should a presentence investigation be requested" because probation officers are not trying to exculpate the defendant. (Tr. Vol I, Exhibit 3). In an exhaustive search of federal cases, however, we could find none in which a lawyer was held to have been ineffective simply for allowing a presentence investigation report.

Moreover, Mr. Cooey himself agreed to the presentence investigation report after the judge explicitly told him twice that there might be information adverse to him that would have to be admitted.[17] And any "prejudice" to Mr. Cooey's case from the report—the inclusion of the social history and the police sergeant's statement—is minimal (those "errors" have, as discussed above, been shown not to be prejudicial).

▲ In failing to be prepared for the mitigation phase of the trial. (p. 92). This lack of preparation has several elements: First, Mr. Cooey claims that his counsel first requested a presentence investigation report only 10 days prior to the mitigation hearing, leaving little time to prepare based on the results of that investigation. This claim seems to be raised for the first time here, and we therefore reject it. Second, Mr. Cooey claims that his counsel should have requested social workers to assist in presenting mitigating evidence—especially considering that the "strongest factors in favor of mitigation were Mr. Cooey's youth and substance abuse, two areas within the specialized knowledge of social workers." (p. 93). The Ohio appellate court found, however, as follows:

"Defendant failed to proffer any exculpatory evidence in support of his petition that was not presented at defendant's trial and arguably would have been if the trial court had appointed a social worker to assist defendant." *State v. Cooey*, 1994 WL 201009, 1994 Ohio App. LEXIS 2281 at *39.

This finding deserves deference under Section 2254(e).

17. The transcript, Vol. VII, p. 2—3, records the following exchange:

The Court: "For the record I had a call from Mr. Roger Davidson requesting the Court to get a pre-sentence investigation done.... The PSI has been ordered. It will be ready next Tuesday, a week from tomorrow, but, Mr. Cooey, PSIs can be helpful to a person and they can also have information that's adverse to the person."

The Defendant: "Yes, sir."

The Court: "I just want it clearly understood up front that this report will be given to the Court. When done I will let both the defense counsel read that report, as well as the prosecutor, prior to the mitigation. The information will be read and used by all judges involved in the case. If there is adverse information in there, of course you have got to recognize that that's the risk you take."

The Defendant: "Yes, sir."

The Court: "Now, Mr. Davidson, it was a phone call to my bailiff that started this?"

Mr. Davidson: "Yes."

The Court: "Is it correct that the defense counsel do wish a PSI in this case?"

Mr. Davidson: "We had discussed it prior to that phone request. We both want it."

The Court: "And Mr. Cooey has agreed to that?"

Mr. Davidson: "Yes, sir, he has."

Third, counsel should have got a pharmacologist and/or toxicologist to testify as to Mr. Cooey's mental impairment that might have resulted from his alcohol and drug abuse—another of the "strongest mitigating factors." (p. 94). The Ohio appellate court found, however, as follows:

"The Ohio Supreme Court ruled on direct review that expert testimony about defendant's alleged diminished capacity was properly excluded from the guilt/innocence phase of his trial.... Although the psychologist ... opined that a pharmacologist and/or toxicologist could have presented ... 'a more detailed and complete understanding of the impact' of drugs on defendant's 'cognitive and emotional functioning,' neither the psychologist nor defendant's counsel has explained how that 'more detailed and complete understanding' would have been exculpatory. Accordingly, defendant did not demonstrate a 'reasonable probability' that he was prejudiced during either phase of his trial by his trial lawyers' alleged failure." *State v. Cooey*, 1994 WL 201009, 1994 Ohio App. LEXIS 2281 at *31.

This finding deserves deference under Section 2254(e). Thus, Mr. Cooey does not "prove that he was actually prejudiced by the claimed constitutional error." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir.1994).

▲ In failing to object to prosecutorial misconduct (p. 94). This misconduct included the prosecutor's references to the victim impact evidence when arguing for the death penalty. We am not sure that this is misconduct in the first instance—surely the sentencer should take into account the harmfulness of the offense in deciding on the penalty. As this court said in analyzing a similar claim:

"The U.S. Supreme Court has held that there is no per se bar to the introduction of victim impact evidence and argument. See *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). 'In the majority of cases, ... victim impact evidence serves entirely legitimate purposes. In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.' *Id.* at 825, 111 S.Ct. 2597." While *Payne* was announced in the context of the sentencing phase of a capital trial, its rationale has been applied to reject challenges to victim impact evidence introduced in the guilt phase as well. See *Black v. Collins*, 962 F.2d 394, 408 (5th Cir.1992) (holding that victim impact argument presented during both guilt and sentencing phase did not render trial fundamentally unfair). *See also Bennett v. Angelone*, 92 F.3d 1336, 1348 (4th Cir.1996) ("Thus *Payne* suggests that limited victim background evidence may be admitted—indeed, may have to be admitted—at the guilt phase of trial."). Moreover, as the Seventh Circuit has remarked, 'we must recognize that the state should not be required to present ... closing arguments that are devoid of all passion.' *Williams v. Chrans*, 945 F.2d 926, 947 (7th Cir. 1991)." *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir.2000).

Even if the prosecutor's statement was misconduct, the Ohio Supreme Court already considered Mr. Cooey's claim that the court considered the prosecutor's mention of the victim impact statements—and that court concluded that there was "no affirmative indication" that the court considered the victim impact statements in

Mr. Cooey's sentence. *State v. Cooey*, 544 N.E.2d at 913. Moreover, the Ohio Supreme Court found that the prosecutor's statements in and of themselves did not constitute "plain error" because the evidence against Mr. Cooey was "overwhelming" and it was highly likely that the outcome of the trial would have been the same absent any prosecutorial misstatements. *Id.* at 910. The Ohio appellate court on collateral review agreed: "The properly admitted evidence against defendant was so overwhelming that, to the extent defendant's trial lawyers failed to object to irrelevant evidence or prosecutorial misconduct, there was not a 'reasonable probability' that defendant was prejudiced by that failure." *State v. Cooey*, 1994 WL 201009, 1994 Ohio App. LEXIS 2281, at *36 (Ct.App.Ohio, May 25, 1994).

### VII. The Constitutionality of Ohio's Death Penalty Law

We shall discuss each of Mr. Cooey's allegations regarding the constitutionality of the Ohio death penalty statute, even though the district court found this claim procedurally barred as *res judicata, Cooey v. Anderson*, 988 F.Supp. at 1100, the Ohio appellate court having found that the constitutional claim "could reasonably have been raised at defendant's trial or on direct review of his judgment of conviction but [was] not." *State v. Cooey*, 1994 WL 201009 at *5.

#### A. Whether the law is Arbitrary and Unequal

Mr. Cooey asserts that prosecutors have too much discretion in bringing indictments, that overlapping offenses and inadequate narrowing of the eligible offenses make prosecutions arbitrary, and that the death penalty is imposed in a manner that discriminates against blacks. (p. 96—97).

None of these arguments, however, is supported by any evidence beyond conclusory assertions. As for the prosecutorial discretion argument, the Supreme Court faced a similar argument in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), where the petitioner complained of the discretion allowed throughout the justice system (*i.e.*, prosecutorial freedom not to indict or to plea bargain, jury nullification, executive clemency). The Court responded by saying:

> "In order to repair the alleged defects pointed to by the petitioner, it would be necessary to require that prosecuting authorities charge a capital offense whenever arguably there had been a capital murder and that they refuse to plea bargain with the defendant. If a jury refused to convict even though the evidence supported the charge, its verdict would have to be reversed .... Finally, acts of executive clemency would have to be prohibited. Such a system, of course, would be totally alien to our notions of criminal justice. Moreover, it would be unconstitutional." *Id.* at 299 n. 50.

All that is necessary, said the *Gregg* Court, is that the decision to impose capital punishment "had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant." *Id.*

We find the racial discrimination claim especially hard to understand, given that Mr. Cooey is white.[18] It is conceivable that a white defendant could have standing to challenge a judicial process that alleged-

---

**18.** An officer testified that Mr. Cooey is a "white male" of "stocky build" with "reddish hair." Tr. Vol. III, p. 61.

ly discriminates against blacks, see *Campbell v. Louisiana*, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) (granting a white defendant standing to challenge the exclusion of blacks from a grand jury); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (granting a white defendant standing to challenge discrimination against blacks in peremptory challenges). However, these two cases arose *after* Mr. Cooey's conviction, which means that any rule requiring racial proportionality in death sentencing would be a new rule barred from application on collateral review by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[19] Moreover, the Supreme Court has already held that statistical studies purporting to show racial discrimination in the imposition of capital punishment do not lead to a finding of an equal protection violation; in order for a defendant to prove an equal protection violation, he must demonstrate "purposeful discrimination" in his *own* case. *McCleskey v. Kemp*, 481 U.S. 279, 293—94, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Mr. Cooey makes no showing that the death penalty was used against him because of any intent to discriminate against his whiteness. This claim is meritless.

### B. Whether Ohio has Unreliable Sentencing Procedures

Mr. Cooey first complains that Ohio's statute does not require the State to prove the absence of any mitigating factors or that death is the only appropriate penalty. (p. 97). The Supreme Court has held, however, as follows:

"So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing *on him* the burden of proving mitigating circumstances sufficiently substantial to call for leniency.... We therefore decline to adopt as a constitutional imperative a rule that would require the court to consider the mitigating circumstances claimed by a defendant *unless the State negated them* by a preponderance of the evidence." *Walton v. Arizona*, 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (emphasis added).

Even if the Supreme Court had overruled this point since 1990, that would not matter for Mr. Cooey's case—because no rule requiring the state to disprove mitigating factors was in place at the time of Mr. Cooey's conviction, any such rule would be a new rule barred from application to his case by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

Mr. Cooey alleges that the statutory sentencing scheme is unconstitutionally vague (p. 97), because of the requirement that "aggravating circumstances ... outweigh the mitigating factors." The word "outweigh" creates the risk of arbitrary or capricious sentencing. We simply do not understand this argument, nor do we see any evidence of a constitutional violation.

---

**19.** As the Sixth Circuit has noted:
 *"Teague* applies when the Supreme Court announces a new rule of criminal procedure. Essentially, if a decision announces a 'new rule' of criminal procedure, it is not to be applied retroactively to convictions that have already become final when the decision is announced .... A decision announces a new rule if it breaks new ground, imposes new obligations on the states or federal government, or was not dictated by precedent existing at the time the defendant's conviction became final." *In re Green*, 144 F.3d 384, 386 (6th Cir.1998).

Mr. Cooey then alleges that the statutory mitigating circumstances are vague (p. 97), and give the jury too much discretion. As to this argument, the Supreme Court has said:

> "[W]e have never ... held that the state must affirmatively structure in a particular way the manner in which juries consider mitigating evidence. And indeed, our decisions suggest that *complete jury discretion is constitutionally permissible.* [emphasis added] See *Tuilaepa, supra,* at 978–979 (noting that at the selection phase, the State is not confined to submitting specific propositional questions to the jury and may indeed allow the jury unbridled discretion); *Stephens, supra,* at 875 (rejecting the argument that a scheme permitting the jury to exercise 'unbridled discretion' in determining whether to impose the death penalty after it has found the defendant eligible is unconstitutional, and noting that accepting that argument would require the Court to overrule *Gregg, supra* )." *Buchanan v. Angelone,* 522 U.S. 269, 276—77, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998).

### C. Whether there was a Lack of Individualized Sentencing

Here Mr. Cooey alleges that the death penalty is unconstitutional because it requires proof of aggravating circumstances in the trial phase of the bifurcated proceeding. (p. 98). He points out that the Supreme Court "has approved schemes that separate the consideration of aggravating circumstances from the determination of guilt." "Requiring proof of the aggravating specifications simultaneously with proof of guilt effectively prohibits a sufficiently individualized determination in sentencing .... " (*Id.*)

We find this argument unpersuasive. While the Supreme Court has approved schemes that allow the determination of aggravating circumstances at the sentenc-

ing phase rather than at the trial phase, it has certainly not held that such a separation is constitutionally required. Quite the contrary. The Court has held:

> "The use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial *or the guilt phase.*

> \* \* \* \* \* \*

> "It seems clear to us from this discussion that the narrowing function required for a regime of capital punishment may be provided in either of these two ways: The legislature may itself narrow the definition of capital offenses, as Texas and Louisiana have done, so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Lowenfield v. Phelps,* 484 U.S. 231, 244, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (emphasis added).

Thus, we find no constitutional violation possible here.

### D. Right to Jury Trial is Burdened

Mr. Cooey asserts that the Ohio law puts an impermissible risk of death on capital defendants who exercise their right to a jury trial. How? By letting a defendant who pleads guilty or no contest benefit from the trial judge's discretion to "dismiss the specifications 'in the interest of justice.'" (p. 99). This benefit is not available to the defendant who chooses a jury trial.

Mr. Cooey's only support for this constitutional argument is a concurrence by Justice Blackmun in a 1978 case—*Lockett v.*

*Ohio*, 438 U.S. 586, 617, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (Blackmun, J., concurring). This citation does not suffice to show a cognizable constitutional claim as to this issue.

### E. Ohio's Mandatory Submission of Reports and Evaluations

Mr. Cooey next alleges that Ohio law is invalid because it requires submission to the jury or judge of any presentence investigation report or mental evaluation requested by the defendant. (p. 99). This prevents defense counsel from giving effective assistance and prevents the defendant from effectively presenting his case.

As for the presentence investigation report, this claim seems utterly implausible. This is not a federal case, but the Federal Rules of Criminal Procedure actually do require the submission of any presentence investigation report:

Rule 32(b) provides as follows:

"Presentence Investigation and Report

"(1) When Made. The probation officer must make a presentence investigation and submit a report to the court before the sentence is imposed, unless:

"(A) the court finds that the information in the record enables it to exercise its sentencing authority meaningfully under 18 U.S.C. § 3553; and

"(B) the court explains this finding on the record."

This being the federal rule, it would be passing strange if the courts should hold it unconstitutional for a state to have such a requirement. At any rate, we could find

no case where the Constitution has been construed as forbidding such a rule.

As for the mandatory submission of the mental evaluation, this claim is both wrong and irrelevant. It is wrong because Ohio law does not require without qualification the submission of any psychiatrist's report—rather, an Ohio statute protects the right against self-incrimination by providing that no "statement made by a defendant in an examination ... relating to his mental condition ... shall be used in evidence against him on the issue of guilt in any criminal action." Ohio Rev.Code § 2945.39(D). Thus, the Ohio Supreme Court found that "a defendant's statements made in the course of a court-ordered psychological examination may be used to refute his assertion of mental incapacity, but may not be used to show that he committed the acts constituting the offense." *State v. Cooey*, 544 N.E.2d at 911. This is far different from a blanket requirement that all psychiatrist's reports must be submitted to the court without exception.

Moreover, this claim is irrelevant because the trial court did not consider the relevant psychiatric report in sentencing Mr. Cooey. As the Ohio Supreme Court described the series of events, Mr. Cooey first pleaded not guilty by reason of insanity, the court ordered a psychiatric examination by Dr. Quinn (who found Mr. Cooey sane), and Mr. Cooey then withdrew his insanity plea. The "trial court did not consider the Quinn report in sentencing," but did consider a few excerpts from that report which were quoted in the presentence investigation report. *State v. Cooey*, 544 N.E.2d at 910.[20] The Ohio Supreme

---

20. The Ohio Supreme Court's finding is supported by the following statement from Attachment One to the trial panel's opinion (found at pp A–53 and A–54 of Exhibit C in the record book titled "Respondent's Return of Writ—Exhibits A through VVV"). The trial panel stated:

"The Court inquired of defense counsel if they wanted a mental examination in accordance with § 2929.03(D) as part of the mitigation phase.... Defense counsel indicated that they were not sure if they would request such a report. Two days later the Court ordered the report prepared. Subse-

Court did find that the excerpts from Dr. Quinn report contained inculpatory statements by Mr. Cooey in violation of the Ohio Code provision cited above, but this inclusion was held not to be plain error because Mr. Cooey had confessed his actions numerous other times. *Id.* at 911. So, we do not think that Mr. Cooey was injured by any consideration of Dr. Quinn's report.

Even if the Ohio statute required the court to consider any psychiatric report, Mr. Cooey does not demonstrate how that would be a constitutional violation.

### F. Whether the Definition of Mitigating Factors is Unreliable

Mr. Cooey complains about the definition of mitigating factors in Ohio Rev.Code § 2929.04(B)(7), which speaks of "Any other factors that are relevant to the issue of whether the offender should be sentenced to death." Mr. Cooey asserts that this definition allows the sentencer to "consider any factor relevant to imposing death," and that this creates a " 'reasonable likelihood' that the sentencer will view proffered (B)(7) mitigation as a nonstatutory aggravation, rather than evidence that weighs against a death sentence." (p. 100). Moreover, Mr. Cooey asserts, by letting the sentencer count mitigating evidence as an aggravating factor, this prevents the sentencer from "giving mitigating evidence its full consideration and effect."

We find this argument meritless. Mr. Cooey makes no showing that any Ohio court has ever used evidence presented for mitigation under § 2929.04(B)(7) as evidence of an aggravating factor instead. He certainly cannot show that such a thing happened in his case, because it did not. Moreover, even if Section 2929.04(B)(7) re-

ally has the potential claimed for it by Mr. Cooey, there is no reason to think that is a constitutional violation.

### G. Whether Ohio Rev.Code § 2929.04(A)(7) is Constitutionally Invalid when Used to Aggravate Ohio Rev.Code § 2903.01(B)

This argument (p. 100) was also made earlier in Mr. Cooey's brief, (pp. 25–26) where he asserted that the term "principal offender," as used in Ohio Rev.Code § 2929.04(A)(7), fails to narrow the class of offenders eligible for the death penalty because it merely replicates the elements of aggravated murder. Without repeating the analysis we offered above at Part II. A.3, we would add that even if the provision for aggravated circumstances merely replicated the provision for aggravated murder, that would still be insufficient to prove Mr. Cooey's point. As the Supreme Court said in a recent case, "an aggravating circumstance *may duplicate* an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed *by the definition of the offense itself.*" *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1513 n. 16, 146 L.Ed.2d 389 (2000) (emphasis added) (citing *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)). The result in *Lowenfield* (which, interestingly, Mr. Cooey cites on p. 24) was that the Court upheld a death sentence where the defendant had been convicted of first-degree murder under a law which stated, "[T]he offender has a specific intent to kill or to inflict great bodily harm upon more than one person," and where the sole aggravating circumstance was that "the offender knowingly created a risk of death or great bodily

quently, defense counsel notified the Court that they did not want a mental examination. The report has been prepared, but at the Court's order, has not been disseminat-

ed to anyone. *None of the judges on the panel have seen it, or discussed it.*" (Emphasis added).

harm to more than one person." *Lowenfield,* 484 U.S. at 243, 108 S.Ct. 546.

Applying the holding of *Lowenfield* to Mr. Cooey's case, it would be entirely within constitutional bounds for Ohio to provide similar definitions for both "aggravated murder" (in Ohio Rev.Code § 2903.01(B)) and "aggravating circumstances" (in Ohio Rev.Code § 2929.04(A)(7)). What matters is that Ohio has, *in the first instance,* narrowed the class of those eligible for the death penalty by requiring some aggravated form of murder. Accordingly, this claim of Mr. Cooey does not make a substantial showing of a constitutional violation.

### H. Whether Ohio Rev.Code § 2929.03(D)(1) and § 2929.04 are Unconstitutionally Vague

The sentence to which Mr. Cooey objects from § 2929.03(D)(1) is as follows: "The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the *nature and circumstances of the aggravating circumstances* the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender." (emphasis added).

Section 2929.04(B), to which Mr. Cooey also objects, reads as follows:

"(B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, and if the offender did not raise the matter of age pursuant to section 2929.023 [2929.02.3] of the Revised Code or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, *the nature and circumstances of the offense,* the history, character, and background of the offender, and all of the following factors ...." (emphasis added).

What offends Mr. Cooey about these two statutory provisions is that Section 2929.04(D)(1) requires the sentencer to consider the "nature and circumstances of the aggravating circumstances," while Section 2929.04(B) requires the sentencer to consider (for purposes of mitigation) the "nature and circumstances of the offense." This "makes Ohio's death penalty weighing scheme unconstitutionally vague because it gives the sentencer unfettered discretion to weigh a statutory mitigating factor as an aggravator." (p. 101).

We find this argument meritless The only conceivable way for a court properly to weigh all the aggravating and mitigating circumstances is to take a hard look in both instances at the "nature and circumstances of the offense." We cannot understand how the court's analysis could possibly become "unconstitutionally vague" by looking at the nature and circumstances of the offense in determining both aggravating and mitigating circumstances. We

cannot even imagine a constitutional violation here.

### I. Proportionality and Appropriateness Review

Mr. Cooey alleges that Ohio Rev.Code § 2929.021 requires data "respecting the outcomes of capital indictments" to be reported to the Ohio Supreme Court, that this provision fails to require enough information as to non-capital offenses, that additional data are needed to compare capital to non-capital cases, and that without adequate data the "uncontrolled prosecutorial discretion extant in Ohio" will lead to the arbitrary imposition of the death penalty. (p. 102).

Expanding on this argument, Mr. Cooey refers to Ohio Rev.Code § 2929.05, which requires the appellate court to conduct review of a death sentence as follows: "In determining whether the sentence of death is appropriate, the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, and the supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases." Mr. Cooey alleges that Ohio fails to make sure that the Ohio Supreme Court is adequately informed as to the circumstances in which life sentences are imposed (because of inadequate reporting under Section 2929.021), and that the Supreme Court is thus unable to conduct any effective comparisons between death sentence cases and life sentence cases.

The Supreme Court held in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) that only one type of proportionality review is required—that in which the court makes sure that the sentence is proportional to the nature of the offense. Courts are *not* required to exercise another type of proportionality review, *i.e.,* comparing the sentence given in any particular case to the sentences given in other cases. As the Court said:

"The proportionality review sought by Harris, required by the Court of Appeals, and provided for in numerous state statutes is of a different sort. This sort of proportionality review presumes that the death sentence is not disproportionate to the crime in the traditional sense. It purports to inquire instead whether the penalty is nonetheless unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime. The issue in this case, therefore, is whether the Eighth Amendment, applicable to the States through the Fourteenth Amendment, requires a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the penalties imposed in similar cases if requested to do so by the prisoner. Harris insists that it does and that this is the invariable rule in every case.... We do not agree." *Id.* at 43—44, 104 S.Ct. 871.

*Pulley v. Harris* is regularly followed by circuit courts today. See, *e.g., Hughes v. Johnson,* 191 F.3d 607, 621—22 (5th Cir. 1999); *Roach v. Angelone,* 176 F.3d 210, 216 (4th Cir.1999); *Coe v. Bell,* 161 F.3d 320, 352 (6th Cir.1998).

Thus, Mr. Cooey does not allege any cognizable constitutional violation here. The Constitution simply has not been held to require proportionality review of the sort that Mr. Cooey desires.

### CONCLUSION

Having considered each of the issues Mr. Cooey wishes to present, we doubt that a certificate of appealability is warranted as to any of them.